STATE of Wisconsin, Plaintiff-Appellant,

v.

Richard BOND, Defendant-Respondent.

Court of Appeals

*No. 86–0593–CR. Submitted on briefs December 16, 1986.—
Decided April 8, 1987.*

(Also reported in 407 N.W.2d 277.)

179

For the plaintiff-appellant the cause was submitted on the briefs of *David A. Sierleja,* district attorney Green Lake County, *Bronson C. La Follette,* attorney general, and *William L. Gansner,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *Nila Jean Robinson* of *Robinson, Robinson, Peterson, Rudolph & Cross* of Appleton.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. The state appeals from an order of the trial court granting Richard Bond's (Bond) motion to dismiss a prosecution for theft in violation of sec. 943.20(1)(a), Stats. The state contends that the trial court erred as a matter of law in ruling that after a prior dismissal of a charge of theft by fraud in violation of sec. 943.20(1)(d), the subsequent prosecution for theft was unconstitutional because jeopardy had attached.

The only issue on appeal is whether the state's agreement with Bond to prosecute on one specific offense relating to a criminal transaction is a binding agreement which subsequently bars the state from prosecuting him on any other charges related to the same transaction once he had been acquitted of the initial charged offense during a previous trial. We conclude that the state and Bond, with the approval of the trial court, entered into a binding agreement which is enforceable against the state. We further conclude that failure to enforce this agreement would violate Bond's due process rights. Accordingly, we affirm.

180

The original complaint against Bond contained three charges.[1] Counts one and three alleged fraudulent writings in violation of sec. 943.39(1), Stats. Count two alleged theft by fraud in violation of sec. 943.20(1)(d), Stats., specifically alleging that Bond wrongfully obtained title to a generator by intentionally deceiving and defrauding Berlin Memorial Hospital (Berlin).

[1]The original three-count complaint alleged:

Count 1: that on August 30 and 31, 1983, with intent to defraud, the above named defendant, being an agent of a corporation, to wit: Berlin Memorial Hospital, Inc., did falsify the record and account belonging to the corporation, to wit: a Berlin Memorial Hospital Purchase Order, and Notification of Use Card, by false entry, omission and signing, and by publishing a written statement regarding the Corporation knowing that said written statement to be false, (Class D Felony), contrary to Section 943.39(1), Wisc. Stats., which carries a maximum penalty of a fine of not more than $10,000.00 or imprisonment not to exceed 5 years or both; and

Count 2: that on *August 31, 1983,* the above named defendant did obtain title to property of another, to wit: *one (1) generator,* 5 KW, Serial Number KA710852, property of Berlin Memorial Hospital, by intentionally deceiving the hospital with a false representation which was known to be false, and made with intent to defraud, and did so defraud the Berlin Memorial Hospital, *(Class A Misdemeanor), contrary to Section 943.20(1)(d),* Wisc. Stats., which carries a maximum penalty of a fine of not more than $10,000.00 or imprisonment not to exceed 9 months or both.

Count 3: On February 10, 1984, with intent to defraud, the above named defendant, being an agent of a corporation, to wit: Berlin Memorial Hospital, Inc., did falsify a record belonging to the corporation, to wit: a Purchase Order numbered 1835, by false entry, (Class D Felony), contrary to Section 943.39(1), Wisc. Stats., which carries a maximum penalty of a fine of not more than $10,000.00 or imprisonment not to exceed 5 years or both. [Emphasis added.]

Numerous amendments to the complaint and information followed.[2] Finally, on July 23, 1985, a

[2]Prior to the preliminary examination, the complaint (in Case No. 84–CR–20) was amended by the newly-elected Green Lake county district attorney. Counts one and three were charged as before, while count two amended the charge of theft by fraud to a Class C felony rather than a Class A misdemeanor, pursuant to sec. 943.20(3)(c), Stats.; this difference between count two of the original complaint and count two of the amended complaint resulted from an increase in the alleged value of the generator. A new count was added, count four, charging as a Class C felony theft by fraud of twenty-one separate items with the period of offense defined as January 6, 1981 through June 5, 1984.

Subsequent to the filing of the amended complaint, a preliminary examination was held at which time Bond was bound over for trial. An information setting out all four counts was filed. The sole revision from the amended complaint was that count four in the information deleted the listing of twenty-one items and instead alleged theft by fraud of property in general.

On July 11, 1985, the state moved to amend the information. The thrust of this motion was to consolidate counts two and four of the information so that count two instead charged theft of property in general rather than the charge being specifically limited to theft of the generator and incorporated the charge as a continuing offense alleged to have occurred from January 6, 1981 through January 5, 1984. However, while count two charged a Class C felony in violation of sec. 943.20(1)(a), theft, and 943.20(3)(c), Stats., the language of the charge is the language of sec. 943.20(1)(d), theft by fraud, namely, "obtain[ing] title to property of another ... by intentionally deceiving the hospital with a false representation ... made with intent to defraud." Counts one and three remained the same as in the original information. Bond's attorney objected to the amended information and a motion date was set before Judge David C. Willis.

On July 18, 1985, the state filed an amended motion and order to amend the information (the second amended information). The thrust of the amendment again was count two. This time the

stipulation was entered into between the state and Bond wherein the state agreed *not* to proceed with the amended information charging *theft* but to proceed with the original information charging *theft by fraud* in violation of sec. 943.20(1)(d) and (3)(c), Stats., but broadening the theft by fraud charge from August 31, 1983 to a time period between January 1, 1981 through June 11, 1984. The trial court engaged in a dialogue with the state and Bond regarding the stipulation as to counts one and three which were dropped and count two regarding the theft by fraud charge with the expanded time span included. The relevant portion of that hearing provides:

> MR. SIERLEJA: I would state that on the record, your Honor. *I am not planning to recharge the Defendant in any way regarding those counts.*

> THE COURT: You are stating that as far as the Defendant's association with Berlin Memorial Hospital and based upon all the facts you know today, *this is the only charge that you will be proceeding against him on?*

> MR. SIERLEJA: *That is correct,* your Honor. [Emphasis added.]

Based on this stipulation, a trial commenced on the one-count information, theft by fraud, which read as follows:

prosecution changed the language of count two to conform to a charge of theft in violation of sec. 943.20(1)(a) and (3)(c), Stats., namely, that the defendant did "intentionally·take and carry away, use, transfer, conceal, and/or retain possession of movable property." The property was alleged to have a value exceeding $2,500 and the offense was alleged as continuous from January 6, 1981 through January 5, 1984. Counts one and three remained the same as in the original information.

By stipulation of the parties hereto, the undersigned District Attorney for Green Lake County, hereby informs the court:

Count 1: That the defendant *on January 1, 1980, through June 11, 1984,* did obtain *title to property* of another, *having a value exceeding $2,500.00,* to wit: Berlin Memorial Hospital, a corporation located in the City of Berlin, County of Green Lake, State of Wisconsin, by intentionally deceiving the hospital with a false representation which was known to be false, and with intent to defraud, and did so defraud the Berlin Memorial Hospital, *a Class C Felony,* contrary to Section 943.20(1)(d) and Section 943.20(3)(c), Wisconsin Statutes, which carries a maximum penalty of a fine not exceeding $10,000.00 or imprisonment not to exceed 10 years or both. [Emphasis added.]

At the close of the state's case, Bond moved for a dismissal, which was granted. The trial court (Judge David C. Willis, presiding) held that the elements of theft by fraud were not established based on the evidence presented. Subsequent to the dismissal, the state filed a new complaint against Bond alleging theft in violation of sec. 943.20(1)(a), Stats.[3] Judge

[3]The state filed its new complaint on July 26, 1985, as Case No. 85–CR–30 (the earlier case number had been 84–CR–20). The one-count complaint alleged a violation of theft, a Class C felony, pursuant to sec. 943.20(1)(a) and (3)(c), Stats., namely, that the defendant did "intentionally take and carry away, use, transfer, conceal and/or retain possession of movable property." The property was alleged to have a value exceeding $2,500 and the offense was alleged as continuous from January 6, 1981 through January 5, 1984.

It is to be noted that proposed count two of the second amended information in Case No. 84–CR–20 contained language similar to the single count in the pending information in Case No. 85–CR–30,

Willis recused himself from presiding at the new hearing.

A preliminary examination was held before Judge Earl J. McMahon who bound Bond over for trial. Bond then filed a motion to dismiss on the ground that jeopardy had attached, thereby barring any subsequent prosecution for theft involving his association with Berlin. After submission of briefs and arguments of counsel, the trial court ruled that, as a result of the prior dismissal of the theft by fraud charge after a jury had been impaneled and witnesses sworn, a subsequent prosecution for theft was unconstitutional based on the court's finding that jeopardy had attached. The court barred any subsequent prosecution for theft. The state appeals the trial court's dismissal of its theft charge against Bond.

In dispute is Judge McMahon's interpretation of the pretrial agreement between the state and Bond. Judge McMahon interpreted the agreement to mean that *no* further charges of any kind would be brought against Bond relative to his association with Berlin. The state contends that both the trial court and Bond are mistaken when they interpreted the state's agreement to pursue the theft by fraud charge as "the only charge" the state would ever pursue against Bond regarding Berlin. Instead, the state argues that its promise not to "recharge the Defendant in any way regarding *those* counts" meant that it was "simply eliminating the multiple charges previously pending against Bond [the fraudulent writing counts one and three]," and that "there was no similar agreement on

namely, a violation of theft pursuant to sec. 943.20(1)(a), Stats., and by order of the court, the information in Case No. 84–CR–20 was so amended.

185

the substantive theft charge." (Emphasis added.) It contends that when its charging agreement prior to Bond's trial is viewed from this perspective, it is clear that the state never even contemplated that it was relinquishing its right to later choose to prosecute Bond for theft in the event he was acquitted on the theft by fraud charge.

We agree with Judge McMahon that when Judge Willis asked the state if this would be "the only charge" against Bond regarding the present facts of Bond's association with Berlin, the meaning of the agreement was clear. Thus, under any standard of review, we conclude, as did the trial court, that the state's promise not to recharge Bond bars the state from prosecuting him further on these facts.

The issue of a prosecutorial promise was first raised in *Santobello v. New York,* 404 U.S. 257, 262 (1971), within the context of a plea bargain. The Supreme Court stated that "the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is *reasonably due in the circumstances." Id.* (Emphasis added.) It acknowledges that while in a plea bargain the attendant circumstances will vary, it emphasizes that "a constant factor" in this context is the prosecutorial promise. *Id.* It stated that:

> when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Id.* Thus, in remanding the case, it concluded that "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises" must be considered in the negotiation of pleas of guilty. *Id.*

Likewise, the Supreme Court in *Mabry v. Johnson,* 467 U.S. 504, 510 (1984), recently reaffirmed the *Santobello* standard that a prosecutorial promise must be "fulfilled." While the Court held that the defendant's acceptance of a prosecutor's proposed plea bargain did not create a constitutional right to have the bargain specifically enforced, it premised its holding on the necessity of a prosecutor's "fulfilled promise." It stated that since the defendant's plea was in "no sense induced by the prosecutor's withdrawn offer," then the defendant's plea was in "no sense the product of governmental deception [in that] it rested on no 'unfulfilled promise.'" *Id.*

In Wisconsin, a prosecutorial promise must be fulfilled and is considered binding. In *Nelson v. State,* 53 Wis. 2d 769, 193 N.W.2d 704 (1972), the defendant contended that the state failed to live up to its plea bargain when, in asking for dismissal of two felony theft charges, it moved that they be dismissed *without prejudice,* despite the fact that the district attorney had agreed there would be no subsequent prosecution on those charges. While the court held that the defendant's argument was premature because further prosecution had not been threatened or instituted, it did point out that it:

> has held that a subsequent reprosecution of a charge dismissed as a result of a plea bargain is *barred by elementary due process. If, in fact, there* has been a valid plea bargain in which the *state agreed to dismiss the charges and abstain from further prosecution, the agreement is binding and the state is barred from bringing a subsequent prosecution,* irrespective of the language used by

the court in dismissing those charges. [Emphasis added; citations omitted.]

*Id.* at 775, 193 N.W.2d at 708.

The *Nelson* holding and due process analysis that a prosecutorial agreement with a defendant is binding has applicability in bargaining contexts outside of plea bargains. Essentially, *any* violation of a prosecutorial promise triggers considerations of fundamental fairness and is a deprivation of due process. *See United States v. Carrillo,* 709 F.2d 35, 37 (9th Cir. 1983); *Cooper v. United States,* 594 F.2d 12, 18 (4th Cir. 1979). Once a defendant has relied upon a prosecutorial promise in any way and the state does not fulfill its promise, the promise is to be held enforceable against the state. *See State v. Jorgensen,* 137 Wis. 2d 163, 404 N.W.2d 66 (Ct. App. 1987).

In the instant case, Bond relied on the state's charging agreement when it allowed specific new dates to be inserted in the original information as to the time of the alleged violation. The trial court stated:

> The original Information of February 11, 1985, recited in Count 2 thereof that the alleged violation occurred on August 31, 1983. The Agreement of July 23, 1985, changed this to read ".... on or about January 6, 1981, through January 5, 1984 ....", thus freeing the State from being restricted to the date of August 31, 1983, as set forth in the original Information with relation to proof.

Yet the state did not fulfill its promise to Bond. As noted by the trial court, the state "voluntarily relinquished" the theft charge against Bond in its agreement with Bond before the first trial and its recharg-

ing Bond with theft "involves the same basic facts as presented in the earlier case, and does involve [Bond's] association with Berlin Memorial Hospital during the same time period." As such, the safeguards that were necessary to insure Bond "what [was] reasonably due [him] in the circumstances" were denied him by the state. *See Santobello,* 404 U.S. at 262.

Based on these facts, we conclude that the state's failure to fulfill its promise must be held enforceable against the state as a deprivation of due process for Bond and therefore bars any further prosecution against Bond on the same facts. Accordingly, we affirm the trial court's order granting Bond's motion to dismiss.

*By the Court.*—Order affirmed.