STATE of Wisconsin, Plaintiff-Respondent,††

v.

Heriberto CASTILLO, Jr., Defendant-Appellant.†

Court of Appeals

*No. 95–1628. Oral argument September 4, 1996.—Decided October 23, 1996.*

(Also reported in 556 N.W.2d 425.)

††Petition to cross-review granted.
†Petition to review granted.

600

601

On behalf of the defendant-appellant, there were briefs and oral arguments by *Keith A. Findley*, assistant state public defender.

On behalf of the petitioner-respondent, there was a brief by *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general. There were oral arguments by *Warren D. Weinstein*.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J.   Heriberto Castillo, Jr., appeals from his ch. 980, STATS., commitment to the Wisconsin Resource Center as a sexually violent person. Castillo contends, inter alia, that his due process rights were violated when the modified commitment order allowed the State to "retain the benefit of its bargain [Castillo's admission to the petition's allegations and waiver of his

right to a jury trial] while relieving [it] of its obligation to fulfill its promise of a community placement." We agree and reverse the commitment orders. Consistent with Castillo's requested relief, we remand to the trial court to allow him to withdraw his admission.[1]

In May 1990, at the age of fourteen, Castillo was adjudicated delinquent on two counts of first-degree sexual assault for having had sexual intercourse with his sister.[2] He was placed under supervision at Norris Adolescent Center and was eventually placed at Ethan Allen School.

Prior to his scheduled release date, the State filed a petition to have Castillo committed as a sexually violent person, *see* § 980.015(2), STATS., and thereby postpone his release and order his commitment for continuing treatment. A probable cause hearing was held. At that hearing, a psychologist testified for the State that Castillo had a mental disorder, paraphilia, which involves choosing and fantasizing about sexual partners who are inappropriate, either by virtue of

---

[1] Castillo also contends that the trial court wrongly ordered an institutional placement after it had initially determined that a community placement was appropriate and that ch. 980, STATS., is unconstitutional as applied here because the State refused to make available the least restrictive placement option. Because we conclude that the benefit of the placement bargain is dispositive, we decline to address the other issues presented for review. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983). This is in keeping with the general rule that cases should be decided on the narrowest possible grounds. *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989).

[2] The dispositional order also included two other counts of having had sexual intercourse with his sister, which were read in. At the time of the two charged incidents, Castillo's sister was nine years old.

their age or relationship to the individual. The psychologist detailed Castillo's family history, the results of treatment and his belief that Castillo continued to pose a threat to his sister. The psychologist also expressed concern that Castillo might choose to have sexual contact with other inappropriate partners since he had done so in the past.[3]

The court found probable cause to believe that Castillo was a sexually violent person under ch. 980, STATS. However, two mental health experts and the State agreed that supervised release was appropriate. This was in recognition of the ch. 980 requirement that "[t]he department shall arrange for control, care and treatment of the person in the least restrictive manner . . . ." Section 980.06(2)(b), STATS. The State attempted to reach a settlement in order to enter the commitment order specifying supervised release.

While these negotiations were ongoing, the Department of Health and Social Services (DHSS) prepared and filed a predispositional report which recommended institutional placement. Section 980.06(1), STATS., places responsibility for the "control, care and treatment" of any person found to be sexually violent with DHSS. According to the State, DHSS was not supporting community based supervision "because they don't have a place to put him." Discussions between the State, Castillo's counsel and DHSS followed in an attempt to secure community-based supervision and release. In January 1995, Castillo

---

[3] The psychologist noted that in addition to having had sexual intercourse with his sister, Castillo had also sexually abused another child over the age of sixteen but under the age of eighteen. He testified, "I felt that his sexual disorder manifests itself in a number of different ways, including but not limited, by any means, to children."

informed the court that he would admit to the allegations in the petition and waive his trial rights in exchange for a court order requiring DHSS to locate a community placement. The court accepted Castillo's admission and then ordered DHSS to identify a community-based facility.

DHSS attempted to place Castillo in a community-based setting.[4] Ultimately, DHSS recommended placement at Cephas House, a Department of Corrections halfway house run under contract by Lutheran Social Services (LSS). Consideration was also given to placement in a private apartment with intensive supervision by a private social worker. The court accepted the recommendation that Castillo be placed at Cephas House. A final written dispositional order was entered by the court.

Within two weeks, Cephas House, although initially receptive to the placement, declined to accept Castillo. This was based on public reaction to the placement, which had caused LSS to fear that the town would take zoning action against it. Its landlord also threatened not to renew the Cephas House lease if Castillo were placed there. The alternative, placing Castillo in a private apartment under the supervision of a private social worker, was then ordered. This option failed after media attention was focused on Castillo living at the apartment building and the landlord bowed to community pressure by refusing to rent to DHSS.[5]

The State then brought a motion to reopen Castillo's dispositional order and modify it to an

---

[4] Placement in his father's home was ruled out because his father had a prior conviction himself for a sex offense.

[5] While additional attempts were made to secure an apartment, these were also unsuccessful.

institutional placement, since "the attempts to effectuate and execute the court's order for placement have not been successful, [and] a different placement alternative must be established." The trial court concurred, reasoning that "[a]t this time the least restrictive level of treatment is the Resource Center." The court then ordered Castillo committed to the Wisconsin Resource Center, and this appeal followed.

We begin with an analysis of the State's filing of the motion for reconsideration after it became apparent that the State would be unable to fulfill the community placement agreement. A trial court has inherent power to vacate or modify an order. *See* § 807.03, STATS. The trial court's power to amend its earlier order when it became apparent that DHSS would be unable to place Castillo in a community-based setting is not at issue. *See Servatius v. Pickel,* 30 Wis. 507, 508-09 (1872).

Our analysis of the legal effect of the State's motion to revise the dispositional order and the trial court's subsequent modification of that order requires that we apply the principles of fundamental fairness and due process to the facts of the case. We review de novo the application of constitutional principles to undisputed facts. *See State v. Comstock,* 163 Wis. 2d 218, 221, 471 N.W.2d 596, 597 (Ct. App. 1991), *rev'd on other grounds*, 168 Wis. 2d 915, 485 N.W.2d 354 (1992).

The supreme court has determined that the provisions of ch. 980, STATS., are constitutional. *See State v. Carpenter,* 197 Wis. 2d 252, 276, 541 N.W.2d 105, 114 (1995); *see also State v. Post,* 197 Wis. 2d 279, 293-94, 541 N.W.2d 115, 118 (1995). Furthermore, ch. 980 includes several sections which outline certain rights afforded to persons who face commitment

proceedings. Section 980.03(2), STATS., provides that *without limitation by enumeration,* persons are to be afforded the right to counsel, to remain silent, to present and cross-examine witnesses, and to have any hearing recorded by a court reporter. Additionally, § 980.05(1m), STATS., directly addresses an individual's trial rights when it states: "All constitutional rights available to a defendant in a criminal proceeding are available to the person."

At its most fundamental level, due process concerns the right to be treated fairly. The law is clear that when an individual has given up the right to a jury trial by pleading guilty, fundamental fairness requires that the individual's expectations be fulfilled. *See State v. Wills,* 187 Wis. 2d 529, 537, 523 N.W.2d 569, 572 (Ct. App. 1994).

The United States Supreme Court has stated, "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262 (1971). This is reiterated in *State v. Bond,* 139 Wis. 2d 179, 187, 407 N.W.2d 277, 280 (Ct. App. 1987), when it states that a prosecutorial promise is considered binding and must be fulfilled. This court went on to note that the due process analysis which underpins the law that a prosecutorial agreement with a defendant is binding also has applicability in bargaining contexts outside of plea bargains. *Id.* at 188, 407 N.W.2d at 281. As we there concluded, "Essentially, *any* violation of a prosecutorial promise triggers considerations of fundamental fairness and is a deprivation of due process." *Id.*

It is undisputed that Castillo waived his right to a jury trial when he admitted the allegations which supported the petition that he is a sexually violent person. It is also clear from the record that the reason he admitted to the allegations was to move the dispositional process forward and allow the court to order DHSS to arrange for community-based supervision and treatment. For the reasons outlined in the statement of facts, DHSS was unable to place Castillo in a community-based setting. When this became apparent, the State requested a modification of the dispositional order which had ordered community-based supervision and treatment and instead requested that Castillo be placed in an institutional setting. We conclude that the State's request for a modification of the dispositional order was a breach of its plea agreement with Castillo.

The State disputes this analysis and contends that because Castillo's commitment was a civil proceeding, no "plea agreement" was ever reached. We are not persuaded. Under the language of *Santobello* and *Bond*, the designation of the proceeding as civil or criminal is immaterial; rather, the fact that due process rights were waived in exchange for an inducement is critical.

The State further argues that even if the negotiations between Castillo and the State amounted to a plea agreement, it has not breached that agreement because it recommended supervised release. While at the outset the State was a proponent of Castillo's supervision in a community-based setting, this argument ignores the role the State played in seeking a modification of the dispositional order.

█

The State submits that § 980.06(2)(d), STATS., permits the court to take the action it took in the instant case. The State quotes, as pertinent, the following portion of the statute:

> If the department alleges that a *released person* has violated any condition or rule, or that the safety of others requires that supervised release be revoked . . . it may revoke the order for supervised release . . . . [Emphasis added.]

We disagree. This section pertains only to *released persons* who are already under the custody and control of DHSS. Castillo was never released. Furthermore, the language the State omitted after the word "revoked" states, "[H]e or she may be taken into custody under the rules of the department." *See id.*[6] At the time the court issued the modification of its final dispositional order, Castillo was still in custody.[7]

---

[6] The pertinent portion of § 980.06(2)(d), STATS., reads:

If the department alleges that a released person has violated any condition or rule, or that the safety of others requires that supervised release be revoked, he or she may be taken into custody under the rules of the department. The department shall submit a statement showing probable cause of the detention and a petition to revoke the order for supervised release to the committing court and the regional office of the state public defender . . . . The state has the burden of proving by clear and convincing evidence that any rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked. If the court determines after hearing that any rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked, it may revoke the order for supervised release . . . .

[7] The original final dispositional order dated March 21, 1995, stated that "[o]n or before March 29, 1995, the Department shall physically place [Castillo] at the Cephas

The cited section of ch. 980, STATS., does not apply to relieve the State of its burden according to the plea agreement.

In sum, Castillo waived his right to a jury trial and admitted to the allegations in the ch. 980, STATS., petition after the State agreed that he would be placed in a community-based setting. *See* § 980.05, STATS. Castillo's counsel stated that this was done to enable the trial court to order DHSS to locate a community-based facility where Castillo would be under supervised release rather than institutionalized. The agreement also foreclosed Castillo's unmonitored return to the community.

■

DHSS was unable to locate a ch. 980, STATS., community placement that would accept Castillo, and the State moved to modify the dispositional order to direct institutional placement. The trial court granted the State's motion and revised the order, committing Castillo to an institution, the Wisconsin Resource Center. We conclude that Castillo's admission to the allegations in the underlying petition was akin to a plea agreement and hold that when the State failed to adhere to its bargained promise, regardless of the reason, the trial court was required to allow Castillo an opportunity to withdraw his plea admitting to the petition.

House . . . ." The order further allowed that "[i]f [DHSS] cannot make the necessary arrangements for physical placement . . . at the Cephas House on or before March 29, 1995, [Castillo] shall then be placed in an apartment, rooming house or other like living arrangement in Waukesha County to be chosen and supervised by Danny F. Patrick . . . ." The order then returned Castillo to the Wisconsin Resource Center "pending placement under this Order."

■ Having concluded that the State breached its plea agreement with Castillo, the only remaining issue is that of a remedy. The law is clear that the concept of fundamental fairness prohibits the government from breaching an agreement which induced a person to take action otherwise detrimental to himself or herself in reliance on the agreement. *State v. Beckes*, 100 Wis.2d 1, 6, 300 N.W.2d 871, 874 (Ct. App. 1980). Beckes then goes on to state that without detrimental reliance on the agreement, the individual has an adequate remedy by being restored to the position that he or she occupied before entering into the agreement. *Id.* at 7, 300 N.W.2d at 874. Furthermore, if specific performance of the terms of a plea agreement is not possible, a withdrawal of an induced plea is the only available remedy. *See State v. Bangert*, 131 Wis.2d 246, 292, 389 N.W.2d 12, 34 (1986).

■ Under the facts of this case, the court determined that specific performance of the State's agreement was not possible. Castillo remains in custody because of his detrimental reliance on the State's proffered plan for noninstitutionalized release. We conclude that the appropriate remedy is to return Castillo "to the position he occupied before he entered into the agreement." *See Beckes*, 100 Wis.2d at 7, 300 N.W.2d at 874. Since the State was unable to keep its part of the plea agreement that Castillo be placed under community-based supervision, he must be permitted to withdraw his no contest plea.

*By the Court.*—Orders reversed and cause remanded.

BROWN, J. (*concurring in part, dissenting in part*). What saves the sexual predator law from being unconstitutional is its requirement that DHSS provide the defendant with treatment in the least restrictive manner possible, not the least restrictive treatment that DHSS has available. Since the trial court found that the least restrictive treatment for Heriberto Castillo, Jr., was supervised community placement, the difficulty that DHSS faced in locating an appropriate facility was not legitimate grounds for later ruling that Castillo should instead be placed at the Wisconsin Resource Center.

Because of the mandate that is placed on DHSS, I dissent from the part of the majority decision holding that Castillo's alternative request to set aside his plea agreement is the narrowest and most appropriate grounds on which to decide this case. Majority op. at 596 n.1. As counsel for the attorney general noted at oral argument, setting aside the plea agreement and permitting Castillo to pursue a trial on the merits will not "solve the problem." Because the evidence almost certainly points towards a conclusion that Castillo is a sexual predator, the trial court will again face the task of crafting a proper dispositional order.

However, even with my concerns regarding the application of the sexual predator law to Castillo, I still join the majority's decision to reverse the trial court's amended dispositional order that directed Castillo to the Wisconsin Resource Center. *See* majority op. at 603-04. But as I explained above, I would not remedy Castillo's claim by remanding this case for further proceedings and a possible trial. Rather, I would act on the suggestion to get to the merits. Here, I construe ch. 980, STATS., to require that DHSS provide Castillo with the community placement that the trial court

previously found appropriate and, accordingly, I would direct the trial court to enter an order demanding that DHSS adhere to the law.

In the paragraphs below, I will further outline my beliefs regarding the demands that the sexual predator law places on DHSS when the State seeks commitment of a sexual predator. I will then show how this analysis applies to Castillo's claim that he is entitled to the form of commitment outlined in the original dispositional order.

DHSS's duty to give alleged sexual predators treatment in the "least restrictive manner consistent with the requirements of the person" is what makes ch. 980, STATS., constitutional. *See* § 980.06(2)(b). This mandate is readily discernable upon examination of the history leading to the attorney general's defense of the law in *State v. Carpenter*, 197 Wis.2d 252, 541 N.W.2d 105 (1995), and *State v. Post*, 197 Wis.2d 279, 541 N.W.2d 115 (1995).

The legislature developed ch. 980, STATS., in response to the public's outcry over the Gerald Turner case. *Post*, 197 Wis.2d at 343, 541 N.W.2d at 138-39 (Abrahamson, J., dissenting). The statements of the Governor and some of the other lawmakers, moreover, strongly suggest that the original intent of the law was to keep sex offenders locked away from the public at all costs. *See id.* at 343-45, 541 N.W.2d at 139. In fact, Justice Abrahamson grounded her dissenting conclusion that the law was unconstitutional on this evidence. *Id.* at 338, 541 N.W.2d at 136.

Nonetheless, when the attorney general's office had to defend attacks that the law had ex post facto and double jeopardy problems, it downplayed the confinement purpose and instead argued how the law

was really aimed at treatment. In its brief to the supreme court, the attorney general wrote:

> The statute's primary purpose of commitment of dangerous, mentally disordered persons in order to protect the public is revealed by the language and structure of the statute, which provides for commitment to the department of health and social services for control, care and treatment with provisions for the least restrictive placement and periodic review of the person's condition . . . . This basic structure and emphasis on the person's current condition are wholly consistent with a mental health commitment statute and wholly inconsistent with punishment.

Brief for State of Wisconsin at 12, *State v. Carpenter*, 197 Wis.2d 252, 541 N.W.2d 105 (1995) (Case No. 94-1898). The attorney general's office also tried to show the supreme court in *Post* how:

> The statute is narrowly drawn to target those who are at highest risk to rape or molest again. It is narrowly drawn to serve only its legitimate public protection purpose—by incapacitation and treatment. The treatment is geared to reducing the risk of recidivism. And the incapacitation ends when that purpose is fulfilled.

Brief for State of Wisconsin at 45, *State v. Post*, 197 Wis.2d 279, 541 N.W.2d 115 (1995) (Case Nos. 94-2356 and 94-2357). Based on such statements, the attorney general's office certainly understands that the acceptable purpose of the sexual predator law is to provide treatment, not to incarcerate or punish.

Of course, what is most important to my analysis is the supreme court's reaction to these claims. Here, I read the *Carpenter* and *Post* decisions to accept the

attorney general's analysis that treatment and commitment to DHSS make ch. 980, STATS., distinguishable from a punitive sanction. For example, Justice Bradley, writing for the majority in *Carpenter*, explained how ch. 980 did not involve punishment because "a person found to be sexually violent is committed to the custody of DHSS for control, care and treatment, as opposed to the DOC for imprisonment." *Carpenter*, 197 Wis.2d at 266, 541 N.W.2d at 110. She further emphasized how "DHSS is required to 'arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person ....' " *Id.* (quoting § 980.06(2)(b), STATS.).

Justice Geske appears to have also accepted the attorney general's analysis when she made the following statement:

> We conclude that treatment is a bona fide goal of this statute and we presume the legislature will proceed in good faith and fund the treatment programs necessary for those committed under chapter 980.

*Post*, 197 Wis.2d at 308, 541 N.W.2d at 124. Although DHSS has had difficulty locating an appropriate facility for Castillo, and the attorney general's office now seems to be backing away from the claims it previously made in *Carpenter* and *Post*, this court has a duty to enforce the supreme court's conclusion that such treatment is "necessary" for persons subjected to commitment under ch. 980, STATS. *See Post*, 197 Wis.2d at 308, 541 N.W.2d at 124; see also § 980.06(2)(b).

Even though the supreme court accepted the attorney general's analysis about how the sexual predator law may be used without violating the

Wisconsin or federal constitutions, I recognize that there is continuing debate over how the law should be applied to people like Castillo. Many of this state's citizens believe that sexual predators should be kept locked away from society regardless of the constitutional implications. Signs of this debate are indeed present within this record. For example, a newspaper article about the case quotes one of the law's sponsors, Senator Alberta Darling, who described the trial court's community placement order as "an outrage." I infer from her statements that she believes that Castillo, like all other sexual predators, should be placed at the Wisconsin Resource Center because the legislature specifically designated the facility to house such offenders. *See* § 980.065(1), STATS.

Nevertheless, the *Carpenter* and *Post* decisions reveal that the supreme court determined that the sexual predator law is a constitutional treatment statute, not an unconstitutional punitive statute, because the law accounts for the possibility that a sexual predator may not need to be secured away at the Wisconsin Resource Center to receive effective treatment. The supreme court read the law to place a duty on DHSS to ensure that sexual predators would receive the "least restrictive" placement possible. *See* § 980.06(2)(b), STATS. I am bound to that conclusion.

In fact, I draw a strong analogy between DHSS's duty to provide personalized treatment for accused sexual predators and its duty to provide persons set for conditional release from mental institutions with residential placement. *See Rolo v. Goers*, 174 Wis.2d 709, 717-18, 497 N.W.2d 724, 727 (1993). Although the *Rolo* court specifically addressed DHSS's duty under § 971.17, STATS., 1993-94, the plain wording of the sexual predator law shows that the legislature

similarly intended that DHSS would provide accused sexual predators with community placement if that was what the trial court found to be the "least restrictive" treatment possible. *See* § 980.06(2)(b), STATS.

I acknowledge that one would not ordinarily expect sexual predators to be the "benefactors" of legislative largesse. Moreover, I think it is quite possible that the legislature (and the attorney general's office when it argued *Post* and *Carpenter*) never imagined that a prosecutor would face a case in which community placement of the sexual predator was the appropriate disposition. However, the plain words of the statute and the supreme court's interpretation of those words show that the legislature accounted for this remote possibility. And the legislature had good reason to do so—it wanted the sexual predator law to survive a constitutional challenge. *See Carpenter*, 197 Wis.2d at 268-69, 268 n.10, 541 N.W.2d at 111-12, 111 (addressing claim that treatment and early release provisions of ch. 980, STATS., were only included to make the law constitutionally "palatable").

Understanding that DHSS's role is limited to providing the services to sexual predators that the trial court deems are appropriate, I am puzzled by the suggestion made before this court by the attorney general's office that the sexual predator law was written "backwards" because DHSS is not able to participate in the formation of the dispositional order. The attorney general's office suggests that earlier involvement by DHSS would prevent Castillo's situation from reoccurring because then the trial court would know what was available *before* it developed a disposition.

But the law says that the trial court must determine what treatment is "consistent with the requirements *of the person.*" Section 980.06(2)(b), STATS. (emphasis added). The legislature did not write § 980.06(2)(b) to say that the trial court must determine what treatment is "consistent with the requirements of the person *and the resources of the department.*" Indeed, because the trial court is constitutionally required under *Post* and *Carpenter* to focus only on the treatment needs of the person, what resources DHSS happens to have available is simply not relevant to the calculus that the trial court performs when it writes the dispositional order.

Turning now to Castillo's specific appellate claims, I conclude that the trial court made a legal error when it modified its order calling for community placement. Although a trial court certainly has the inherent power to modify or vacate its orders, *see* § 807.03, STATS., its decision to do so must be properly grounded on the law and is subject to appellate review. Here, the trial court grounded its decision to modify the order solely on DHSS's inability to locate an appropriate facility. The majority also recognizes this fact. Majority op. at 598-99. But because the sexual predator law requires that DHSS provide a sexual predator with community placement when a trial court finds that such placement is warranted, the trial court made an error in law when it determined that DHSS's difficulties were a legitimate reason to modify the dispositional order.[1]

---

[1] The State also cites evidence demonstrating that Castillo's psychological condition had deteriorated in the time that passed between the formation of the original order and the hearing on its motion to amend that order. I nonetheless read the trial court's opinion to have rejected this evidence and I do

With regard to a remedy for the identified error, I would simply enforce the rule set out in *Carpenter* and *Post* which requires that a sexual predator's confinement be the least restrictive available. Although the attorney general's office argues that this court cannot make a state agency appropriate funds without violating the separation of powers doctrine, when the legislature wrote the sexual predator law it imposed a duty on DHSS to provide such facilities. My decision would simply enforce that directive. *See Rolo*, 174 Wis. 2d at 717-18, 497 N.W.2d at 727 ("the legislature must have provided for some governmental entity to fund residential placements and other services, or the entire process would be rendered meaningless . . . ."). I would therefore reinstate the trial court's original dispositional order. I would then direct the trial court to issue an order compelling DHSS to fulfill its duty to provide Castillo with treatment consistent with that order.

■■■■■■■

not believe that the State has established that this finding was clearly erroneous. *See* § 805.17(2), STATS.