STATE of Wisconsin, Plaintiff-Respondent,

v.

William L. BROCKETT, Defendant-Appellant.†

Court of Appeals

*No. 01–1295–CR. Submitted on briefs February 21, 2002.—
Decided April 17, 2002.*

2002 WI App 115

(Also reported in 647 N.W.2d 357.)

† Petition to review denied 7-26-02.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Hans P. Koesser* of *Koesser Law Office, S.C.* of Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. NETTESHEIM, P.J. William L. Brockett appeals from a judgment of conviction for party to the crime of burglary as a habitual offender contrary to Wis. Stat. §§ 943.10(2)(b) and 939.62 (1999–2000)[1] and theft of a firearm contrary to Wis. Stat. § 943.20(1)(a) and (3)(d)5. Brockett additionally appeals from a trial court order denying him postconviction relief and granting the State's motion for reconsideration. We affirm the judgment and order.

¶ 2. In its reconsideration ruling, the trial court reversed a prior order granting Brockett a new trial based on the ineffective assistance of Brockett's original trial counsel. On appeal, Brockett argues that the trial court did not have the authority to hear the State's reconsideration motion. Alternatively, Brockett argues that the trial court erred by not requiring his presence at the reconsideration proceeding. We reject both arguments and affirm the judgment and order.

## FACTS

¶ 3. On December 9, 1999, the State charged Brockett as a habitual offender with two counts of party to the crime of burglary while armed with a dangerous weapon and two counts of theft. Prior to trial, the State offered, and Brockett rejected, a plea offer for thirteen

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

years' imprisonment. Brockett proceeded to trial following which he was convicted on all counts. On May 1, 2000, the trial court entered a judgment of conviction sentencing Brockett to a total of thirty-five years in prison followed by a consecutive stayed sentence of twenty-five years pending ten years of probation.

¶ 4. On November 3, 2000, Brockett moved the trial court for postconviction relief arguing that his trial counsel, William Campion, had failed to communicate a plea offer which Brockett would have accepted had he known about it.[2] In support of his motion, Brockett attached a facsimile transmittal sheet addressed to his trial counsel from assistant district attorney, Sharon Riek, stating, "10 year offer is revoked." The fax is dated ` February 28, 2000, the day before trial, and was received at Campion's office at 5:46 p.m.

¶ 5. The trial court held a hearing on Brockett's motion on December 14, 2000. Brockett appeared at the hearing via telephone and, prior to commencing the hearing, the court obtained Brockett's waiver of personal appearance. Campion testified that the only offer he recalled was a "13 year offer" and that a formal ten-year offer had not been made. Although Campion remembered having some conversations with Riek on February 28, 2000, he did not recall a ten-year offer being made. He did, however, recall that Riek indicated that she wanted to discuss Brockett's case with a prosecutor in Walworth county who was also handling a burglary allegation against Brockett. Campion testified that he did not receive Riek's fax until the morning of trial at which time he informed Brockett of Riek's

_____

[2] Brockett filed an additional motion for postconviction relief on the grounds that his sentence was unduly harsh. The trial court denied that motion and that ruling is not a subject of this appeal.

facsimile transmittal. Campion also informed Brockett that he was unaware that a ten-year offer had been made. Prior to the commencement of the trial, Campion informed the court that he believed the State's offer to be thirteen years, but he had also advised the court about the facsimile transmittal revoking a ten-year offer. Brockett testified at the motion hearing that had he been informed of the ten-year offer, he would have accepted it.

¶ 6. At the close of the hearing, the trial court found that a ten-year offer had been made, the offer was not communicated to Brockett, and Brockett would have accepted the offer had he known of it. As a result, the court found Campion's performance to be deficient and the court granted Brockett's motion for a new trial.

¶ 7. On January 25, 2001, the State filed a motion for reconsideration of the trial court's decision. The State attached an affidavit by Riek stating that a thirteen-year offer had been made and that "no other offer was conveyed by the State." Riek stated that Campion had approached her on a number of occasions the day before trial, February 28, 2000, to discuss a plea offer. While Riek and Campion had discussed a hypothetical ten-year offer, Riek stated in her affidavit:

> [B]efore that offer was actually extended [Riek] needed to speak to the prosecutor from Walworth County, obtain copies of the reports involving the Walworth County burglary as well as a number of other things .... In speaking to [Campion], it was [Riek's] understanding that he understood that no offer for 10 years was being extended at that time but may, at some point in time in the future be formally extended ....

Because Riek needed time to confer with the Walworth county prosecutor, she had filed a motion to adjourn the

jury trial which was scheduled for the following day. Riek advised Campion that if Brockett opposed the State's motion to adjourn the trial, she would not have the opportunity to conduct the additional investigation and "the 13 year offer would be the last offer on the table." Despite this warning, Campion opposed the State's motion to adjourn the jury trial, and the trial court denied the requested adjournment. Riek then returned to her office and faxed the message to Campion revoking the ten-year offer. Riek indicated that she wrote that the ten-year offer was revoked "in case there ever had been a 10 year offer in the mind of Attorney Campion despite the earlier conversations."

¶ 8. The trial court held hearings on the State's motion to reconsider on February 1, 5 and 6, 2001. At the commencement of the February 1 hearing, Brockett's attorney indicated that Brockett's presence might be required if the court decided to hold an evidentiary hearing. Relying on the supreme court's decision in *State v. Vennemann*, 180 Wis. 2d 81, 508 N.W.2d 404 (1993), the court ruled that Brockett's presence was not required because the matters to be reviewed at the hearing did not pertain to substantial issues of fact as to the events in which the defendant participated. Brockett appeared at the hearing by speaker phone.

¶ 9. Brockett opposed the State's motion for reconsideration. He challenged the trial court's competency to conduct the hearing. Specifically, Brockett argued that the State had had ample opportunity to present its version of the facts at the previous postconviction motion hearing and that the State's remedy was to appeal the court's ruling granting Brockett a new trial. The court rejected Brockett's argument. The court proceeded to hear testimony from Riek and Campion

regarding the circumstances surrounding the ten-year plea offer. The court additionally heard testimony from Brockett and Campion regarding whether Campion had discussed the State's motion for an adjournment of the trial and whether Brockett was opposed to the adjournment.

¶ 10. At the close of the hearing on February 6, 2001, the trial court found that "there was not a definite, certain, clear and unambiguous [ten-year] offer because the conditions underlying the offer really were never met and were really outside the control of the parties." Therefore, the court reversed its prior ruling granting Brockett a new trial. Brockett appeals.

## DISCUSSION

¶ 11. Brockett first argues that the trial court erred in hearing the State's motion for reconsideration. He relies on Wis. Stat. § 974.05, which governs appeals by the State in criminal cases. Brockett argues that this statute provided the exclusive means by which the State could have obtained relief from the trial court's order granting Brockett a new trial. As a result, Brockett concludes that the trial court was not compentent to hear the State's motion for reconsideration.

¶ 12. Whether the trial court properly heard the State's motion for reconsideration is a question of statutory construction which we review de novo. *State v. Murdock*, 2000 WI App 170, ¶ 18, 238 Wis. 2d 301, 617 N.W.2d 175. In addition, whether the trial court lacked competency to hear the State's motion is a question of law which we review de novo. *See State v. Schroeder*, 224 Wis. 2d 706, 711, 593 N.W.2d 76 (Ct. App. 1999).

¶ 13. WISCONSIN STAT. § 974.05 governs appeals by the State in criminal cases. It provides that "an appeal may be taken by the state from any . . . [f]inal order or judgment adverse to the state, whether following a trial or a plea of guilty or no contest [or] [o]rder granting postconviction relief under s. 974.02 or 974.06." Sec. 974.05(a), (b).

¶ 14. While WIS. STAT. § 974.05 sets forth those rulings from which the State may appeal, there is nothing in the language of the statute prohibiting the trial court from hearing a motion to reconsider. As the State correctly points out, a trial court has inherent power to vacate or modify an order pursuant to WIS. STAT. § 807.03.[3] *State v. Castillo,* 205 Wis. 2d 599, 606, 556 N.W.2d 425 (Ct. App. 1996).

¶ 15. The State further argues that it could not appeal the trial court's December 14, 2000 decision pursuant to WIS. STAT. § 974.05 because it had not yet been reduced to a written order. We agree. A postconviction order must be reduced to writing and filed with the clerk of court before this court has jurisdiction to review the ruling. *State v. Malone,* 136 Wis. 2d 250, 257–58, 401 N.W.2d 563 (1987). Even when the trial court has signed an order, in appeals under statutes other than WIS. STAT. RULE 809.30, the court retains the power to act on all issues until the record has been

---

[3] WISCONSIN STAT. § 807.03 provides:

An order made out of court without notice may be vacated or modified without notice by the judge who made it. An order made upon notice shall not be modified or vacated except by the court upon notice, but the presiding judge may suspend the order, in whole or in part, during the pendency of a motion to the court to modify or vacate the order.

transmitted to the court of appeals. Wis. Stat. § 808.075(3). In appeals under Rule 809.30, the circuit court retains the power to act until the notice of appeal is filed. Sec. 808.075(2). Therefore, regardless of whether the order had been reduced to writing, the court retained the authority to hear a motion for reconsideration because the notice of appeal had not yet been filed.

¶ 16. For the reasons stated above, we reject Brockett's argument that the State's only remedy was to appeal the trial court's order. In doing so, we note that public policy favors the trial court's reconsideration of a decision.

> Motions for reconsideration pending appeal serve an important function. First, a trial court's reconsideration may obviate the necessity for an appeal. If so, the parties are not only spared unnecessary expense, but the interests of judicial economy are served as well. Second, even if an appeal is not avoided, a motion for reconsideration that challenges the trial court's decision can hone its analysis, and thus assist appellate review.

*Metro. Greyhound Mgmt. Corp. v. Wis. Racing Bd.*, 157 Wis. 2d 678, 698, 460 N.W.2d 802 (Ct. App. 1990). We additionally said in *Village of Thiensville v. Olsen*, 223 Wis. 2d 256, 262, 588 N.W.2d 394 (Ct. App. 1998):

> A judge's job is to do justice. A judge endeavors to come to the right result. The law gives a judge the right to change his or her mind, so long as it is done in a timely fashion and the parties are given a fair chance to be heard . . . . A judge should not have to live with the consequences of a decision that he or she, upon reflection, believes to be wrong.

This is especially so when, as here, the trial court's decision may have been based on an erroneous understanding of the facts underlying the court's original ruling.

¶ 17. Brockett next argues that the trial court's order granting the State's motion for reconsideration must be reversed pursuant to *Vennemann* because he was not present at the reconsideration hearing and substantial issues of fact were presented pertaining to events in which he participated.

¶ 18. We will not overturn the trial court's determination as to whether Brockett's presence was required at the hearing on the State's motion for reconsideration absent an erroneous exercise of discretion. *Vennemann*, 180 Wis. 2d at 88, 94 n.10. An erroneous exercise of discretion occurs if the record demonstrates that the facts do not support the trial court's decision or that the trial court applied the wrong legal standard. *Carl v. Spickler Enters., Ltd.*, 165 Wis. 2d 611, 622–23, 478 N.W.2d 48 (Ct. App. 1991).

¶ 19. Our supreme court has ruled that a defendant does not have a statutory right to be present at all postconviction evidentiary hearings. *Vennemann*, 180 Wis. 2d at 86. Instead, the court has limited the defendant's right to be present to those postconviction evidentiary hearings that raise substantial issues of fact as to events in which the defendant participated. *Id.* at 87.

¶ 20. In determining whether a prisoner should be physically produced for a postconviction evidentiary hearing, the trial court applies the following test: (1) upon the filing of a motion to produce a prisoner for a postconviction hearing, the court must review the mo-

tion papers to determine whether there are substantial issues of fact as to events in which the prisoner participated; and (2) the trial court must then ascertain that those issues are supported by more than mere allegations. *Id.* at 94–95. If both prongs are satisfied, the court must order the defendant physically produced for the hearing. *Id.* at 95.

¶ 21. As to the first prong, the trial court found that the matters at issue did not pertain to substantial issues of fact regarding events in which Brockett participated. Therefore, the court determined that Brockett's presence was not required. Brockett disagrees with this ruling. He contends that his conversations with Campion regarding the State's motion for an adjournment were at issue and that his testimony conflicted with Campion's testimony on this issue.

¶ 22. We agree that the record reflects a dispute between Campion and Brockett as to whether Brockett wanted to oppose the State's motion for an adjournment. The trial court similarly recognized this tension but noted that those issues were "side matters." We agree. The core issue raised by Brockett's motion for postconviction relief was whether the State had made a ten-year offer and, if so, whether that offer had been communicated to Brockett. It is undisputed that Brockett was not present during any discussions between Riek and Campion pertaining to a ten-year offer. In fact, the core of Brockett's complaint in his postconviction motion was that he knew nothing about this matter and that Campion had failed to communicate with him about the supposed offer. The first question the trial court had to decide was whether such an offer had actually been tendered to Campion by Riek. The evidence as to that question did not implicate Brockett in

any manner. Therefore, the substantial issue of fact on this question did not relate to events in which Brockett participated. We conclude that the trial court did not erroneously exercise its discretion in failing to require Brockett's presence at the hearing on the State's motion for reconsideration.

¶ 23. Brockett additionally contends that the trial court's ruling was erroneously based on its finding that he had failed to file a motion to produce. We disagree. Although the trial court referenced the absence of a motion to produce, the court's ruling clearly focused on whether the State's motion raised substantial issues of fact as to events in which Brockett participated. The trial court concluded that it did not.

## CONCLUSION

¶ 24. We conclude that the trial court properly heard the State's motion for reconsideration. We further conclude that the trial court properly exercised its discretion in determining that Brockett's physical presence at the hearing on the State's motion for reconsideration was not required under *Vennemann*.

*By the Court.*—Judgment and order affirmed.