Lynda KRAMSCHUSTER, Plaintiff-Appellant,

v.

SHAWN E., a minor and Barron County Farmers
Mutual Insurance Company, Defendants,

Donald McCLELLAND and Safeco Insurance Company
of America, Defendants-Respondents.

Court of Appeals

*No. 96–3246. Submitted on briefs April 15, 1997.—Decided
May 13, 1997.*

(Also reported in 565 N.W.2d 581.)

700

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Joe Thrasher* of *Thrasher, Doyle, Pelish & Franti, Ltd.*, Rice Lake.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Alexander T. Pendleton* of *Cook & Franke, S.C.*, Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Lynda Kramschuster appeals an order for summary judgment dismissing her complaint alleging Donald McClelland was causally negligent in the death of her husband, Allan J. Kramschuster, who was shot in a hunting accident by Shawn E., a minor in McClelland's hunting party. Kramschuster contends that the trial court erred by concluding that Mc Clelland was not causally liable for damages resulting from the fatal hunting accident. Because we conclude that McClelland had no duty to supervise or instruct Shawn regarding hunting regulations and because there is no evidence of McClelland's causal negligence, we affirm the order granting summary judgment dismissing McClelland as a party defendant in Kramschuster's negligence action.

Shawn shot and killed Kramschuster in a hunting accident during the 1994 deer hunting season. At the time of the incident, Shawn E. was fifteen years and eight months old. McClelland, who owned certain property near Dark Lake, decided to go to the cottage on that property for the purpose of deer hunting on adjacent land. McClelland invited David E., a distant relative, and his son Shawn to stay at the cabin and be part of the hunting party for the start of the season the next day. Because David was scheduled to work the third shift on the day prior to the start of deer hunting,

he was unable to accept the invitation, but agreed with McClelland that Shawn would go to the cabin on Friday night and join McClelland and his twelve-year-old son, John, in Saturday's deer hunt.

Consistent with these arrangements, McClelland picked Shawn up on Friday evening and McClelland, John and Shawn stayed at the cabin Friday night. During the early morning hours, while it was still dark, the three arose and went to an adjacent parcel of land not owned by McClelland. McClelland told Shawn where to sit, where the McClellands would be located and some generalized suggestions as to Shawn's field of fire so as to drive the deer toward the McClellands in the event Shawn missed the deer.

At this time, Shawn was a tenth grade student and a graduate of the DNR hunter education and firearm safety course. He had been deer hunting numerous times and had previously hunted by himself. As a fifteen-year-old graduate of hunter's safety courses, Shawn is permitted to hunt without adult supervision. The gun used by Shawn was owned by his father who specifically had granted Shawn permission to hunt with the McClellands on that weekend.

There was a path near the site Shawn was instructed to occupy that was used by other hunters seeking access to nearby hunting areas. At the time Mc Clelland instructed Shawn as to the spot he was to occupy for the start of the season, McClelland did not advise Shawn of the existence of the nearby path nor did he advise Shawn to wait for the official start of hunting season in that area or for sufficient light before firing his gun. Shawn, who had previously hunted on this property, was aware of the existence of the path and, as a graduate of the hunter safety course and his

previous hunting experience, was generally familiar with hunting regulations.

While it was still dark and before the official start of the hunting season, Shawn observed what he believed to be a group of deer. He fired his weapon at what he believed to be the largest deer but was in fact a group of hunters, which included Allen Kramschuster, walking up the trail. Shawn's shot struck and killed Kramschuster. Kramschuster's wife, Lynda, brings this action against Shawn, his insurer and McClelland and his insurer for damages arising from her husband's death. The trial court granted McClelland's motion for summary judgment and Kramschuster appealed.

A review of a summary judgment determination by an appellate court follows the same procedure and methodology as is applied by the trial courts. *Newhouse v. Citizens Sec. Mut. Ins. Co.*, 170 Wis. 2d 456, 465, 489 N.W.2d 639, 642 (Ct. App. 1992). The first step in summary judgment is to review the complaint to determine whether a cause of action is stated. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476 (1980). The facts and reasonable inferences are viewed in the light most favorable to the nonmoving party. *See id.* "Questions of law are properly decided by summary judgment." *Kane v. Employer's Ins.*, 142 Wis. 2d 702, 705, 419 N.W.2d 324, 326 (Ct. App. 1987). The existence of a legal duty is a question of law this court determines without deference to the trial court. *State Bank v. Arndt*, 129 Wis. 2d 411, 416, 385 N.W.2d 219, 222 (Ct. App. 1986).

In this case, McClelland argues that Kramschuster's complaint fails to state a claim because the facts alleged reflect that McClelland did not owe a duty to instruct or supervise Shawn. Further,

McClelland claims that there is no causal relationship between any negligent act that may be alleged and Kramschuster's death. In addition to contending that the complaint fails to state a claim, McClelland argues that there is no liability as a result of the doctrine of superseding clause, that liability is barred under the public policy doctrine because the acts of negligence were too remote for McClelland to be held liable for any damages suffered by Kramschuster, and that liability is barred under the doctrine of recreational immunity. Because we conclude that there was no duty owed by McClelland, we affirm the judgment dismissing Kramschuster's complaint against McClelland and his insurer, and do not address the other grounds asserted in support of the trial court's granting of summary judgment.

A claim for negligence must include the following: a duty on the defendant's part, a breach of that duty and a causal connection between the defendant's conduct and the injury sustained. *Nieuwendorp v. American Family Ins. Co.*, 191 Wis. 2d 462, 475, 529 N.W.2d 594, 599 (1995). Kramschuster alleges Mc Clelland is liable based under the theory that Kramschuster negligently failed to reiterate the rules of hunting to Shawn. The first inquiry is whether Mc Clelland had a duty to instruct or supervise. Wisconsin's law of duty follows the minority view in the well-known case of *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (1928). *Klassa v. Milwaukee Gas Light Co.*, 273 Wis. 176, 77 N.W.2d 397 (1956) (expressly adopting dissenting view in *Palsgraf*). The classic statement of duty in Wisconsin is described as:

> The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act. . . .

*Rockweit v. Senecal*, 197 Wis. 2d 409, 419–20, 541 N.W.2d 742, 747 (1995) (quoting *A.E. Invest. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483–84, 214 N.W.2d 764, 766 (1974)). "A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act [or an omission to act] when some harm to someone is foreseeable." *Rockweit*, 197 Wis. 2d at 420, 541 N.W.2d at 747 (quoting *Schuster v. Altenberg*, 144 Wis. 2d 223, 235, 424 N.W.2d 159, 164 (1988)).

Foreseeability is "[i]nexorably interwoven with the concept of duty . . . ." *Johnson v. Misericordia Community Hosp.*, 97 Wis. 2d 521, 529, 294 N.W.2d 501, 506 (Ct. App. 1980). A person only has a duty to refrain from acting or to act when it is foreseeable a harm would otherwise result. *Rockweit*, 197 Wis. 2d at 420, 541 N.W.2d at 747. Foreseeability is not all inclusive but is tempered by what can reasonably be foreseen by the defendant. The duty of any defendant is the duty to act with reasonable care under the circumstances. *McNeese v. Pier*, 174 Wis. 2d 624, 631, 497 N.W.2d 124, 127 (1993). The test is whether the defendant acted or failed "to act under circumstances in which a person of ordinary intelligence and prudence would reasonably have foreseen that such an act or omission would subject [another person] to an unreasonable risk of injury." *Id.*

This case does not involve a question of duty arising as a result of the guest-host relationship between Shawn and McClelland. The basis of liability is argued to arise from a failure to supervise or properly instruct the juvenile in regard to safe hunting procedures and is entirely independent from and unrelated to the guest-host relationship existing from the preceding evening. Accordingly, we are required to determine whether an adult hunter, who is not the child's parent, has a duty to supervise or instruct a fifteen-year-old certified and experienced hunter who is a member of the adult's hunting party. We answer that question under the facts of this case in the negative because we conclude that it was not reasonably foreseeable that Shawn would flagrantly violate hunting rules he knew and understood.

The specific acts of alleged negligence against Mc Clelland involve the failure to advise Shawn to wait until the start of hunting season or until adequate light before beginning the hunt, to refrain from shooting until he has a clear view of his target and what lies within his field of fire. Shawn was a member of Mc Clelland's hunting party but was both an experienced hunter and certified in gun safety. There was no express or implied understanding between Shawn's father David or Shawn and McClelland that Mc Clelland would instruct or supervise Shawn in regard to hunting safety prior to the commencement of hunting. The total extent of the arrangement regarding Shawn was that he was to be a member of a hunting party that involved McClelland and his son John. Because under the circumstances no duty to supervise or instruct Shawn was created between the parties or assumed by McClelland and no such duty is imposed by law, we conclude that there was no duty for

McClelland to supervise or instruct Shawn in regard to the deer hunt.

First, we note that Shawn was familiar with hunting safety regulations, was aware of how to determine the hour at which hunting started and, though erroneous, had made an independent determination as to the hour hunting started. In retrospect, admonitions about adequate light and adequate field of vision before shooting may have averted this tragedy. At the time in question, there were a myriad of other hunting safety rules that may also have come into play and could, under different facts, just as easily have supported allegations of negligence against McClelland. We see no reason to create a duty to instruct for only the rules suggested by Kramschuster when there are numerous other safety rules that might ultimately come into play during the course of the hunting day. The failure to reiterate basic hunting rules to an independent member of the hunting party does not create a foreseeably unreasonable risk of injury to another person under these facts. Because of his experience in hunting and education in firearm safety and because there was no understanding either expressed or implied that Mc Clelland would instruct Shawn in regard to hunting safety regulations, we conclude that McClelland had no duty to so instruct prior to the commencement of this hunt.

Kramschuster also alleges that McClelland had a duty to supervise Shawn as a member of his hunting party. We see no basis for such a claim. Shawn was a member of a hunting party consisting of three persons, one of whom was a twelve-year-old child. While the three were members of the same hunting party, Mc Clelland accepted no responsibility of supervision by

merely inviting David and Shawn to join them in the hunt. He was like any experienced hunter responsible for his own conduct without any duty of supervision being imposed by law or by the facts of this case upon any other member of the hunting party. While the law may imply a duty of supervision when the experience, age or other factors of a child's engaging in a hunt may suggest such supervision is necessary, those are not the facts of the case before us. We conclude that Mc Clelland had no special duties of supervision, control or responsibility over Shawn because of Shawn's experience and certification as a hunter authorized by law to engage in the hunting of deer.

Lastly, some of Kramschuster's arguments infer that McClelland actively misled Shawn into shooting before the official start of the season and induced the erroneous belief that no one else would be in the area. Because these inferences, if proven, would state a claim for negligence, we must engage in a further step of the summary judgment analysis. *See Grams*, 97 Wis. 2d at 339, 294 N.W.2d at 476–77. We must examine pleadings and the evidence of record to determine whether the moving party has shown the absence of fact entitling judgment as a matter of law. *Id.* We conclude that the claims of active negligence by Mc Clelland are not supported by the evidence of record. The record does not show that McClelland ever told Shawn that there would be no other humans in the area. Even if McClelland had made such a statement, Shawn had seen other people in the area and was aware that the trail could be utilized by other hunters. Therefore, Shawn could not have reasonably relied on any statement that no humans would be in the area.

■
The evidence also does not support any suggestion that McClelland communicated to Shawn a time to start shooting. Shawn had independently, although incorrectly, concluded what time the hunting season began in his area and admittedly shot before the start of the season, as he believed it to be. Therefore, there is no evidence that McClelland actively induced Shawn to fire before it was safe. Because we have concluded that there is no duty to instruct or supervise owed by Mc Clelland and there is no evidence that McClelland engaged in active negligence which caused Kramschuster's death, the grant of summary judgment was proper. We, therefore, need not address the other claims advanced by McClelland in support of the summary judgment motion.

*By the Court.*—Judgment affirmed.