STATE of Wisconsin EX REL. Philip I. WARREN, Petitioner-Appellant-Petitioner,

v.

David H. SCHWARZ, in his capacity as Administrator, Department of Administration, Division of Hearings and Appeals, Respondent-Respondent. [Case No. 96–2441]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Philip WARREN, Defendant-Appellant. [Case No. 97–0851]†

Supreme Court

*Nos. 96–2441, 97–0851. Oral argument April 28, 1998.—Decided July 1, 1998.*

(Also reported in 579 N.W.2d 698.)

†Motion for reconsideration denied August 27, 1998.

615

96–2441: For the petitioner there were briefs by *Ralph A. Kalal* and *Kalal & Associates,* Madison and oral argument by *Ralph A. Kalal.*

For the respondent-respondent, the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

97–0851: For the defendant-appellant there was a brief and oral argument by *David D. Cook,* Monroe.

For the plaintiff-respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. JON P. WILCOX, J. These cases have arrived at the court's threshold from divergent paths. Case No. 96–2441 is a review of a published decision of the court of appeals, *State ex rel. Warren v. Schwarz,* 211 Wis. 2d 708, 566 N.W.2d 173 (Ct. App. 1997), which affirmed an order of the circuit court for Richland County, Kent C. Houck, Judge. The circuit court affirmed a decision of the Department of Administration, Division of Hearings and Appeals (Department),

revoking the defendant Philip Warren's (Warren) probation.

¶ 2. Our review of the court of appeals' decision presents only one issue: was Warren's right to due process violated when the State of Wisconsin (State), following Warren's entry of an *Alford* plea, later revoked his probation for failing to successfully complete a sex offender treatment program which required him to admit his guilt? We hold that Warren's right to due process was not violated by the revocation of his probation and, accordingly, we affirm the decision of the court of appeals.

¶ 3. Case No. 97–0851 is before the court on certification from the court of appeals following an order of the circuit court for Richland County, Kent C. Houck, Judge. In this case, the circuit court denied Warren's motions for post-conviction relief and for appointment of counsel. On certification, we consider the following issues: (1) Did the circuit court's failure to inform Warren at the time of his *Alford* plea that he would be required to admit his guilt during a sex offender treatment program render that plea unknowing and involuntary in violation of his right to due process; (2) did the State violate the terms of the *Alford* plea agreement when it revoked Warren's probation for failing to admit his guilt; (3) did the circuit court properly conclude that the evidence against Warren provided "strong proof of guilt" justifying acceptance of an *Alford* plea; and (4) was the circuit court required as a matter of due process to appoint counsel to represent Warren at the post-conviction proceedings in this case?

¶ 4. We hold first that the circuit court's failure to inform Warren at the time of his *Alford* plea that he would have to admit his guilt during a probationary sex offender treatment program did not render his *Alford*

621

plea unknowing or involuntary. Second, we hold that the State did not violate the terms of the *Alford* plea agreement when it revoked Warren's probation for failing to admit his guilt. Third, we hold that the circuit court properly concluded that the evidence before it established "strong proof of guilt" so as to justify acceptance of Warren's *Alford* plea. Finally, we hold that the circuit court was not required as a matter of due process to appoint counsel to represent Warren at the post-conviction proceedings in this case. Accordingly, we affirm the order of the circuit court.

¶ 5. The facts relevant to our disposition of both cases, though lengthy, are not in dispute. On February 26, 1990, Warren was charged with two counts of sexual assault of a child, J.K., the ten year old daughter of a woman with whom Warren had lived in 1989. On March 20, 1990, the circuit court held a preliminary hearing at which J.K. testified. J.K. began her testimony by indicating that on more than one occasion, Warren had "touch[ed] me in the wrong places." She then proceeded to describe the events of a particular incident which occurred sometime after May 22, 1989, in more detail:[1]

> Q: Okay. Can you tell us what happened that day—how the whole thing started out?
>
> A: Well, I was watching t.v. and he told me to come over on the couch.
>
> Q: Okay. And after he told you to come over to the couch, what happened?
>
> A: He started touching me.

[1] These portions of the preliminary hearing testimony appear in Record on Appeal, No. 97–0851 at 63 (Prelim. Hrg. March 20, 1990).

Q: And where did he touch you?

A: On my breasts and on my crotch.

Q: How long did this touching go on?

A: Fifteen to twenty minutes.

. . .

Q: When you say that Phil gives you bad touches, what do you mean?

A: Like rubbing.

Q: And where does he do it? Where does he rub you?

A: My crotch.

¶ 6. Later, J.K. proceeded to describe the particulars of a separate and discrete incident:

Q: Okay. Now what was the second time?

. . .

A: He was in the bedroom.

Q: Okay. And what happened that time?

A: He told me to come in there.

Q: Okay. And after he told you to come in, what happened?

A: He told me to lay down on the bed.

Q: Okay. And after he told you to lay down on the bed, what happened?

A: He started touching me.

Q: And where did he touch you?

A: My breasts and my crotch.

When asked upon cross-examination whether she would "describe this touching by Phil more like tickling," J.K. responded, "No."

¶ 7. The circuit court also received testimony from Officer Virginia Cupp (Cupp), who related to the court statements made by J.K. at an interview conducted in February of 1990.[2] According to Cupp, J.K. told her that Warren "unzipped, unbuttoned and upzipped her pants and put his hands—and as I remember she describes more like two or three fingers—in her crotch area underneath her underpants."

¶ 8. Following the preliminary hearing, a plea hearing was held on July 10, 1990. At the hearing, Warren entered an *Alford* plea to one of the sexual assault counts, and the State agreed to dismiss the remaining count. Before accepting the plea, the circuit court informed Warren of the important rights he was waiving, questioned defense counsel on the voluntariness of Warren's plea, and cautioned the defendant that his probation would be revoked if he failed to complete the terms of his probation. The following exchange then occurred:

THE COURT: ...

One other thing that I should perhaps address. In the event that the Court grants probation, probable [sic] or very likely one item that is going to be ordered is counseling, and you will be expected to enter into good faith counseling as part of the term of probation, and that carries with it—I realize that you, by making your plea of no contest, are not admitting anything in court, but you still would have an obligation to enter into counseling in good

---

[2] The hearsay implications of Officer Cupp's testimony were resolved in the circuit court, and are not a subject before us on review.

faith with the counselor, the psychiatrist, or doctor, whoever, so that's something that you should realize. Now, given all of the things that I told you about the effect of your plea, do you have any questions about it?

THE DEFENDANT: No, your Honor.

Record on Appeal, No. 96–2441 at 8:68 (Plea Hrg. July 10, 1990).

¶ 9. Following this colloquy with the defendant, the circuit court concluded that the testimony at the preliminary hearing on March 20, 1990, was sufficient to constitute strong proof of guilt as required by an *Alford* plea. Accordingly, the circuit court accepted the plea and entered a judgment of conviction against Warren for sexual assault of a child.

¶ 10. On November 5, 1990, the circuit court imposed a five-year prison sentence, which it stayed in favor of an eight-year term of probation. As a condition of that probation, the circuit court ordered that Warren obey the rules of the probation department and "that he attend any and all counseling that is ordered by the Department [of Corrections] including an alcohol and drug assessment, psychological or psychiatric assessment; and that he follow all the recommendations that any study or any counselor comes up with." Record on Appeal, No. 97–0851 at 66:17 (Sentencing Hrg. Nov. 5, 1990).

¶ 11. After being sentenced, Warren served under probationary supervision for approximately five years. During this time, he participated in the Attic Correctional Services' Denial Focus Sex Offender Group on three separate occasions in 1991, 1992 and 1995.[3] Although Warren attended every session and

---

[3] The program director for Attic's Madison office testified that the main goal of the group is to "break denial." Record on

participated in the group discussions, he consistently and repeatedly denied any culpability in his conviction for sexual assault of a child.[4]

¶ 12. In apparent response to his unwillingness to take responsibility for his actions, Warren's probation rules were amended on April 3, 1995, to include Rule 15F, which stated: "You shall enter and successfully complete sex offender treatment groups at an approved outpatient treatment program, attend weekly, and abide by the rules of the contract. . . ." Record on Appeal, No. 96–2441 at 8:35 (Amended Probation/Parole Rules April 3, 1995).

¶ 13. On December 11, 1995, the Department revoked Warren's probation for failure to admit his guilt during counseling, and ordered Warren to begin serving the five year sentence imposed in 1990.[5] The following month, Warren sought review of the Department's revocation decision by petition for writ of certiorari in the Richland County Circuit Court pursuant to Wis. Stat. § 781.01 (1993–94). Raising substantially the same arguments which he presents to this court, Warren sought to be placed back on proba-

Appeal, No. 96–2441 at 17:6 (Prob. Revocation Hrg. Nov. 10, 1995). The requirement that Warren complete the Attic group first appeared as a rule of probation on March 27, 1991.

[4] One counselor noted that he "continues to portray himself as the victim of an over-zealous judicial system that trumped up molestation charges against him. . . ." Record on Appeal, No. 96–2441 at 8:10 (Attic Correctional Servs. Mem. Sept. 27, 1995).

[5] Specifically, the Department listed one reason for revoking Warren's probation: "On or about 08/31/95, Philip I. Warren failed to successfully complete the Attic's Denial Focus Sex Offender Group in violation of rule #15f of the Rules of Probation and Parole signed on 04/03/95." Record on Appeal, No. 96–2441 at 8:90 (Admin. Decision Nov. 17, 1995).

tion. Finding "no merit in [Warren's] contention that he has a special right to maintain his denial during treatment because he was allowed to enter an *Alford* plea," the circuit court affirmed the Department's decision to revoke Warren's probation. Record on Appeal, No. 96–2441 at 12:2 (Mem. Decision July 25, 1996).

¶ 14. Upon review of Warren's subsequent appeal, the court of appeals affirmed. The court reasoned that entry of an *Alford* plea does not imply an assurance that the defendant will not have to admit his guilt during the conviction or punishment phases of his prosecution. *See Warren*, 211 Wis. 2d at 718. The court also rejected Warren's argument that the Department failed to explore the alternatives it had to revocation of his probation. *See id.* at 727. We granted Warren's petition for review on October 14, 1997, and now affirm. Additional facts which are relevant to our disposition of Case No. 97–0851 are set forth below.

¶ 15. On October 9, 1996, Warren filed a post-conviction motion pursuant to Wis. Stat. § 974.06 (1995–96),[6] and a motion for appointment of counsel. At the post-conviction hearing on October 30, 1996, Warren testified that he would not have entered an *Alford* plea if he had known that he would have to admit his guilt during probationary counseling. He therefore sought to withdraw his plea.

¶ 16. The circuit court subsequently denied Warren's motion to withdraw his plea on grounds that the plea colloquy was sufficient to inform the defendant of the required counseling. Second, the court determined that there was no breach of a plea agreement since the court had informed Warren of the consequences of violating his terms of probation. Third, the circuit court

---

[6] All future statutory references are to the 1995–96 volume unless otherwise noted.

reassessed the strength of the preliminary hearing evidence and determined that the preliminary hearing provided sufficient basis for the court's finding of strong proof of guilt. Finally, the court denied Warren's motion for appointment of counsel. Warren appealed from the circuit court's final order.

¶ 17. The court of appeals certified the case to this court pursuant to Wis. Stat. § (Rule) 809.61. On December 16, 1997, we granted the court of appeals' request for certification, and consolidated the cases for our review. We now affirm.

## DUE PROCESS CHALLENGE

██

¶ 18. The first issue we consider is whether Warren's right to due process[7] was violated when the State, following Warren's entry of an *Alford* plea, later revoked his probation for failing to successfully complete a sex offender treatment program which required him to admit his guilt. Appellate review of a probation revocation by the Department is limited to four inquiries: (1) whether the Department acted within the bounds of its jurisdiction; (2) whether it acted accord-

---

[7] The Fourteenth Amendment to the United States Constitution provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." This court has interpreted Wis. Const. art. I, § 1, of the Wisconsin Constitution to be the "functional equivalent" of the federal provision. *See, e.g., Reginald D. v. State*, 193 Wis. 2d 299, 306–307, 533 N.W.2d 181 (1995) (citations omitted). Article I, § 1 of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." Wis. Const. art. I, § 1.

ing to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will, not its judgment; and (4) whether the evidence was sufficient that the Department might reasonably make the determination that it did. *See Van Ermen v. State*, 84 Wis. 2d 57, 63, 267 N.W.2d 17 (1978); *Von Arx v. Schwarz*, 185 Wis. 2d 645, 655, 517 N.W.2d 540 (Ct. App. 1994).

█

¶ 19. Today's decision requires an examination of the second inquiry: whether the Department acted according to law. Because Warren alleges that the Department's enforcement of a particular condition of probation violated his constitutional right to due process, we are presented with a question of law which we review de novo, without deference to the conclusions of the circuit court or the court of appeals. *See State v. Carrizales*, 191 Wis. 2d 85, 92, 528 N.W.2d 29 (Ct. App. 1995); *State v. Miller*, 175 Wis. 2d 204, 208, 499 N.W.2d 215 (Ct. App. 1993).

¶ 20. Warren's due process argument requires this court to tangle with the fundamental principle upon which all *Alford* pleas turn: that an accused may plead guilty, while simultaneously protesting his or her innocence. The plea finds its roots in *North Carolina v. Alford*, 400 U.S. 25 (1970), where the defendant affirmatively protested his innocence, yet pled guilty to second-degree murder in order to avoid the death penalty he may have otherwise received. *See id.* at 26–29. The Supreme Court upheld the trial court's acceptance of such a plea, and stated:

> while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the

imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

*Id.* at 37.

¶ 21. The *Alford* plea, though not uncontroversial,[8] has been accepted in Wisconsin. *See State v. Garcia*, 192 Wis. 2d 845, 532 N.W.2d 111 (1995); *State v. Johnson*, 105 Wis. 2d 657, 314 N.W.2d 897 (Ct. App. 1981). *See also State v. Smith*, 202 Wis. 2d 21, 549 N.W.2d 232 (1996). Warren argues that acceptance of an *Alford* plea necessarily contemplates that defendants will be allowed to maintain their factual innocence, even while completing the terms of probation which have been imposed upon them. In Warren's terms, "the State cannot be allowed to act inconsistently with the bargains which it makes to induce a

---

[8] *See, e.g., State v. Garcia*, 192 Wis. 2d 845, 869, 532 N.W.2d 111 (1995) (Wilcox, J., concurring) (recommending "that the trial courts in this state act with great reticence when confronted with an *Alford* plea."); Fed. R. Crim. P. 11 advisory committee note, "1974 Amendment" ("The defendant who asserts his innocence while pleading guilty or nolo contendere is often difficult to deal with in a correctional setting, and it may therefore be preferable to resolve the issue of guilt or innocence at the trial stage rather than leaving that issue unresolved, thus complicating subsequent correctional decisions."). *Cf.* Curtis J. Shipley, Note, *The Alford Plea: A Necessary but Unpredictable Tool for the Criminal Defendant*, 72 Iowa L. Rev. 1063, 1089 (1987) (concluding that "[t]he *Alford* plea is a necessary option for the criminal defendant within the context of the plea bargaining system."). For a discussion of the pros and cons of accepting *Alford* pleas, see generally 2 David Rossman, *Criminal Law Advocacy* ¶ 9 (1995).

guilty plea in a criminal case." Warren Brief, No. 96–2441 at 17. We disagree.

¶ 22. Before addressing these arguments, however, we first clarify the practical effect, and legal consequence, of an *Alford* plea. An *Alford* plea is a guilty plea in the same way that a plea of *nolo contendere* or no contest is a guilty plea.[9] *Alford* itself makes this clear:

> The fact that [Alford's] plea was denominated a plea of guilty rather than a plea of *nolo contendere* is of no constitutional significance with respect to the issue now before us, for the Constitution is concerned with the practical consequences, not the formal categorizations, of state law.
>
> . . .
>
> . . . [W]e [do not] perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.

*Alford*, 400 U.S. at 37.

¶ 23. We have frequently held that a plea of no contest places the defendant in the same position as though he had been found guilty by the verdict of a jury. *See, e.g., State v. Rachwal*, 159 Wis. 2d 494,

----

[9] The key distinction between the two pleas is that "[a]n *Alford* plea goes beyond a no contest plea in the sense that the former involves an outright claim of innocence while the latter involves something less than an express admission of guilt." Wis JI—Criminal SM–32A at 1 (1995).

503–504 n.6, 465 N.W.2d 490 (1991); *Ellsworth v. State*, 258 Wis. 636, 638–39, 46 N.W.2d 746 (1951); *Brozosky v. State*, 197 Wis. 446, 450, 222 N.W. 311 (1928). The same is true for an *Alford* plea—a view supported by the Wisconsin Jury Instructions. *See* Wis JI—Criminal SM–32A at 10 (1995) ("There is no doubt that an *Alford* plea supports a fully effective criminal judgment. This is especially clear since a true *Alford* plea is a plea of guilty.").

¶ 24. These considerations lead us to conclude that when the State required Warren to admit to the sexual assault in this case,[10] it did not act inconsistently with the "bargain" it had made to "induce" his guilty plea. A defendant's protestations of innocence under an *Alford* plea extend only to the plea itself.

---

[10] It is a central tenet of sex offender treatment to require the offender to admit his or her guilt. *See, e.g., State v. Carrizales*, 191 Wis. 2d 85, 95, 528 N.W.2d 29 (Ct. App. 1995) ("[C]ounselors view this admission as a first step toward rehabilitation" since "untreated sex offenders pose a risk in the community" and a defendant's "refusal to admit guilt makes it difficult for his probation officer to ensure the safety of the community."); Barbara E. Smith, et al., *The Probation Response to Child Sexual Abuse Offenders: How is it Working?* at 8 (ABA Study January 1990) ("With few exceptions, the therapists interviewed said they would not accept anyone in their program who absolutely denied sexual conduct with children."); Kim English, et al., *Managing Adult Sex Offenders in the Community—A Containment Approach* at 5 (Nat'l Inst. Justice January 1997) ("In pursuing safe and effective treatment of sex offenders in the community, therapists must obtain full disclosure of offenders' sexual histories."). This requirement, like any other condition of probation, serves the goals of rehabilitation and protection of the state and community interest. *See Carrizales*, 191 Wis. 2d at 93.

¶ 25. A defendant may choose to enter an *Alford* plea for various reasons. He may wish to take advantage of the state's offer for a reduced sentence. He may wish to spare himself or his family the expense and embarrassment of a trial. Whatever the reason for entering an *Alford* plea, the fact remains that when a defendant enters such a plea, he becomes a convicted sex offender and is treated no differently than he would be had he gone to trial and been convicted by a jury.

¶ 26. On this point, we agree with the conclusions of both the circuit court and the court of appeals. The circuit court stated:

> [t]here are no grades of conviction in the criminal law of Wisconsin. If a person is convicted, after an *Alford* plea is accepted, they stand convicted in the same manner as a person who has had a full jury trial. All convicted persons are subject to the same rules laid down by the Department of Corrections if they are placed on probation or in an institution.

Record on Appeal, No. 96–2441 at 12:2 (Mem. Decision July 25, 1996).

¶ 27. The court of appeals reached the same conclusion by stating: "An *Alford* plea does not imply a promise or assurance of anything. . . .There is nothing inherent in the nature of an *Alford* plea that gives a defendant any rights, or promises any limitations, with respect to the punishment imposed after the conviction." *Warren*, 211 Wis. 2d at 718.

¶ 28. These conclusions are well-founded. Put simply, an *Alford* plea is not the saving grace for defendants who wish to maintain their complete innocence. Rather, it is a device that defendants may call upon to avoid the expense, stress and embarrassment

of trial and to limit one's exposure to punishment. *See Alford*, 400 U.S. at 37; *Garcia*, 192 Wis. 2d at 856–57.

¶ 29. Warren argues that fundamental fairness principles of due process dictate that defendants who enter an *Alford* plea must have notice at the time the plea is entered that they will be required to admit to their offense in order to satisfy the terms of their probation. Warren did not raise this "notice" argument before the court of appeals in Case No. 96–2441. *See generally Warren*, 211 Wis. 2d 708. Although we retain the discretion to do so, this court generally does not consider issues raised for the first time on appeal. *See Flynn v. Dep't of Admin.*, 216 Wis. 2d 520, 554, 576 N.W.2d 245 (1998) (citations omitted). In this instance, we decline to address Warren's "notice" argument and its corresponding use of case law in Case No. 96–2441.[11]

■

¶ 30. In sum, we hold that the revocation of Warren's probation for failure to admit his guilt after acceptance of his *Alford* plea did not violate his right to due process. Accordingly, the decision of the court of appeals in Case No. 96–2441 is affirmed.[12]

---

[11] We note that when asked at oral argument about the difference between his due process "notice" argument and his knowing and voluntary plea (due process) argument in Case No. 97–0851, counsel for Warren conceded: "I think those arguments are basically the same argument."

[12] In two paragraphs of his reply brief, Warren asserts, as he did before the court of appeals, that the Department failed to explore all of its available alternatives to revocation before revoking Warren's probation in this case. *See* Warren Reply Brief, No. 96–2441 at 11–12. Because Warren does not raise this argument as a separate issue for our review, and because the court of appeals adequately addressed this assertion, we find it

## KNOWING AND VOLUNTARY ENTRY OF PLEA

¶ 31. We next consider whether the circuit court's failure to inform Warren at the time of his *Alford* plea that he would be required to admit his guilt during a sex offender treatment program rendered that plea unknowing and involuntary in violation of his right to due process. As a remedy for this claim, Warren seeks to withdraw his plea.

¶ 32. Permitting withdrawal of a guilty or no contest plea is a matter left to the circuit court's discretion. Therefore the circuit court's decision to deny Warren's motion to withdraw his *Alford* plea will be upset only if the circuit court has erroneously exercised its discretion. *See State v. Johnson*, 207 Wis. 2d 239, 244, 558 N.W.2d 375 (1997); *State v. Bangert*, 131 Wis. 2d 246, 288–89, 389 N.W.2d 12 (1986); *State v. Spears*, 147 Wis. 2d 429, 434, 433 N.W.2d 595 (Ct. App. 1988). In order to sustain this discretionary decision, we must ensure that the circuit court's determination was made upon the facts of record and in reliance on the appropriate and applicable law. *Bangert*, 131 Wis. 2d at 289.

¶ 33. After sentencing, a defendant who seeks to withdraw a guilty or no contest plea carries a heavy burden. The defendant must establish by clear and convincing evidence that the circuit court should permit the defendant to withdraw the plea to correct a "manifest injustice." *See State v. Reppin*, 35 Wis. 2d 377, 385–86, 151 N.W.2d 9 (1967); *State v. Krieger*, 163 Wis. 2d 241, 249, 471 N.W.2d 599 (Ct. App. 1991). It is

unnecessary to comment further on this issue. *See State ex rel. Warren v. Schwarz*, 211 Wis. 2d 708, 721–28, 566 N.W.2d 173 (Ct. App. 1997).

well-settled that a guilty plea must be knowingly, voluntarily and intelligently entered, *see Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Bangert*, 131 Wis. 2d at 257; a manifest injustice occurs when the plea is entered involuntarily, as Warren asserts here. *See, e.g., State v. James*, 176 Wis. 2d 230, 237, 500 N.W.2d 347 (Ct. App. 1993).

¶ 34. In this case, we need not delve into the record to determine whether the circuit court followed the necessary procedures, since it is well-established that in informing defendants of their rights, courts are only required to notify them of the "direct consequences" of their pleas. *Brady v. United States*, 397 U.S. 742, 755 (1970). Defendants do not have a due process right to be informed of consequences that are merely collateral to their pleas. *See State v. Santos*, 136 Wis. 2d 528, 531, 401 N.W.2d 856 (Ct. App. 1987); *State v. Madison*, 120 Wis. 2d 150, 159–161, 353 N.W.2d 835 (Ct. App. 1984). Therefore, we must determine whether the requirement that Warren would have to admit his guilt during offense-specific probationary treatment is a direct or collateral consequence of his *Alford* plea.

¶ 35. "The distinction between direct and collateral consequences of a plea. . .turns on whether the result represents a definite, immediate, and largely automatic effect on the range of the defendant's punishment." *James*, 176 Wis. 2d at 238 (citations and internal quotation marks omitted). When the challenged consequence of the plea does not "automatically flow" from the conviction, but rather will depend upon the defendant's psychological condition at a future proceeding, the consequence is collateral. *See State v. Myers*, 199 Wis. 2d 391, 394, 544 N.W.2d 609 (Ct. App. 1996).

¶ 36. In *Myers*, the court of appeals held that the potential for a future Wis. Stat. ch. 980 sexual predator commitment following a sexual assault conviction was a collateral consequence which need not be part of a plea colloquy in order to make a defendant's guilty plea knowing and voluntary. *See id.* at 394–95. Although chapter 980 commitments require future trials and submission of evidence, *see id.*, the same reasoning applies here.

¶ 37. Warren's probation would not have been revoked had he admitted his guilt at the probationary treatment programs he attended during his five years on probation. Stated differently, the consequence of probation revocation for failure to admit guilt during sex offender counseling is not direct and immediate, or even "inevitable" as Warren asserts. It will instead depend upon defendants' willingness to admit their guilt in a rehabilitative setting—a situation which the circuit court, even if it is aware of all the consequences attendant to the commission of a sexual offense such as this one, could not be expected to anticipate or predict.[13]

¶ 38. In *James*, the court of appeals held that resentencing upon revocation of one's probation is only a collateral consequence to a no contest plea. *See James*, 176 Wis. 2d at 243–44. Because the consequence of the defendant's plea was "contingent on his

---

[13] We note the following statement by the circuit court at the post-conviction motion hearing on November 14, 1996: "The Court did not tell Mr. Warren specifically that if he didn't admit guilt, he would fail his counseling and be revoked. Quite frankly, the Court didn't tell him that because the Court didn't necessarily know that, but in any event, I think I warned him that he would have to go through counseling." Record on Appeal, No. 97–0851 at 68:27 (Motion Hrg. Nov. 14, 1996).

own behavior," it was "neither a definite, immediate, nor largely automatic consequence of his plea but only a collateral consequence of which the trial court was not bound to inform him." *Id.* at 244.

¶ 39. In the same way, Warren's probation revocation for failure to admit his guilt in treatment was: (1) not definite, since some defendants who are unwilling to admit their guilt at the plea stage might conceivably be amenable to treatment at the rehabilitation stage; (2) not immediate, either in time or in impact, since the revocation was contingent upon intervening circumstances; and (3) not automatic, since the ability to abide by the conditions of probation was well within Warren's control.[14]

¶ 40. Therefore, we conclude that the circuit court was not required to inform Warren that his probation could be revoked for failing to take responsibility for his actions because it was only a collateral consequence of his conviction. Our conclusion is further supported by policy considerations.

¶ 41. As the facts of this case make clear, not all conditions of probation are imposed at the time the guilty plea is entered.[15] To require the circuit courts to determine and inform the defendant of the current pol-

---

[14] Warren argues that *James* is of no comfort to the State's argument because unlike the defendant in *James*, Warren's behavior after conviction did not change—he continued to maintain his innocence as he had always done. Warren's argument is based upon the same faulty premise we rejected in Case No. 96–2441: that an *Alford* plea gives a defendant the *right* to maintain his innocence after conviction.

[15] The record shows that the Department of Corrections amended Warren's probation rules at least 13 times during his five year period of probation.

icies of the Department of Corrections every time a plea is entered would be both unreasonable and impractical. A circuit court's plea colloquy cannot reasonably be expected to encompass all treatment and conditions of probation which the defendant might need in the future. The Department of Corrections must be given latitude to assess the particular needs of a given defendant, as he or she proceeds through the term of probation. By doing so, the Department of Corrections may best serve the twin goals of probation: rehabilitation and safety to the community. *See Carrizales*, 191 Wis. 2d at 95–96.

¶ 42. Warren cites four cases from foreign jurisdictions to support the proposition that the State cannot revoke a defendant's probation for failing to admit guilt in treatment when he or she was not informed of this requirement at the time of the *Alford* plea. *See People v. Birdsong*, 937 P.2d 877 (Colo. Ct. App. 1996); *Diaz v. State*, 629 So. 2d 261 (Fla. Dist. Ct. App. 1993); *State v. Jones*, 926 P.2d 1318 (Idaho Ct. App. 1996); *People v. Walters*, 627 N.Y.S.2d 289 (Cty. Ct. 1995). We are not persuaded by the foreign authority upon which Warren relies.

¶ 43. We begin by noting that the decision by the Colorado Court of Appeals has recently been reversed. *See People v. Birdsong*, No. 96SC828, 1998 WL 251473 (Colo. May 18, 1998). In that case, the defendant, Birdsong, entered an *Alford* plea to third degree sexual assault in exchange for dismissal of other felony sexual assault counts. *See id.* at *1. The trial court accepted his plea, and imposed a four-year sentence of probation conditioned upon Birdsong's successful completion of offense-specific therapy. *See id.* at *1-*2. By the time that Birdsong entered his plea, he had already attended approximately one year of sex offender treat-

ment, *see id.*, and thus had actual knowledge of the requirements of the sex offender program. *See id.* at *9 (Scott, J., concurring).

¶ 44. When Birdsong failed to admit his guilt during subsequent therapy sessions, the trial court revoked his probation. *See id.* at *2. Upon review of this decision, the court of appeals reversed the probation revocation; the court concluded that acceptance of an *Alford* plea was directly inconsistent with a finding that refusal to admit guilt constituted a probation violation. *See id.* at *3.

¶ 45. The Supreme Court of Colorado reversed, relying in part on the court of appeals' decision in this case. *See id.* at *6-*7 ("We find [the *Warren* court's] reasoning to be wholly consistent with that expressed by the Supreme Court in Alford."). Although the case is not directly on point,[16] the *Birdsong* court shares our view of an *Alford* plea's significance. The court rejected Birdsong's argument that the plea was deficient because the trial court failed to advise him that he would have to admit guilt in order to complete treatment, and stated:

> [w]e view the case differently from the court of appeals. An Alford plea is a guilty plea. As such, the trial court's obligations to advise the defendant were no greater than with any other guilty plea. . . .
>
> . . . .
>
> . . . [T]he specific requirements of a treatment program and the harmony between those require-

[16] The most distinguishing characteristic of the *Birdsong* decision is that the defendant in that case had, as we have indicated, actual knowledge of the particular requirements of the sex offender treatment program he was obliged to complete. *See People v. Birdsong*, No. 96SC828, 1998 WL 251473, at *2, *9 (Scott, J., concurring) (Colo. May 18, 1998).

ments and the defendant's perception of his guilt does not fall within the aegis of the trial court's necessary advisement to the defendant.

*Id.* at *3, *4.

¶ 46. The Colorado Supreme Court further explained that the trial court did not have to inform the defendant that his probation might be revoked for failing to admit his guilt because it was not a direct consequence of the *Alford* plea:

> Here, the possibility that Birdsong's probation would be revoked if he continued to maintain innocence as to his motives for the inappropriate contact with his daughter is not a direct consequence. Viewed from the perspective of the time of the providency hearing, revocation would certainly not be automatic, for an individual might be willing to admit to something in a therapeutic setting but not in a court of law. Additionally, we do not expect a trial court to maintain working familiarity with all requirements of certain types of treatment programs so as to be able to advise defendants with particularity about those requirements before accepting pleas that involve probation. That responsibility falls to the defendant and his or her counsel.

*Id.* at *5. This reasoning is clearly applicable to the facts of this case.

¶ 47. The remaining decisions upon which Warren relies are largely inapposite. *Diaz* is of little assistance to our present inquiry because the defendant pled guilty in that case. Moreover, the primary defect in the revocation of the defendant's probation was the trial court's failure to make counseling a condition of probation. *See Diaz*, 629 So. 2d at 261–62. Neither *Jones* nor *Walters* involve a knowing and vol-

untary plea analysis which distinguishes between direct and collateral consequences of an *Alford* plea. *See generally Jones*, 926 P.2d 1318; *Walters*, 627 N.Y.S.2d 289.

¶ 48. In sum, we conclude that Warren's entry of an *Alford* plea in this case was not rendered unknowing and involuntary by the circuit court's failure to inform him that he would be required to admit his guilt during probationary treatment. We now proceed to address Warren's argument that the State breached its plea agreement by revoking his probation.

## BREACH OF PLEA AGREEMENT

¶ 49. Warren next argues that the State breached the *Alford* plea agreement and thereby violated his right to due process when it revoked his probation solely on his continued assertion of innocence. In this case, Warren concedes that the facts relating to the terms of the plea agreement and the prosecutor's actions after sentencing are not in dispute. Therefore, this is a question of law which we review de novo, without deference to the conclusions of the circuit court. *See State v. Wills*, 193 Wis. 2d 273, 277, 533 N.W.2d 165 (1995); *State v. Ferguson*, 166 Wis. 2d 317, 320–21, 479 N.W.2d 241 (Ct. App. 1991).

¶ 50. The plea stage of a criminal prosecution,

> and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the

inducement or consideration, such promise must be fulfilled.

*Santobello v. New York*, 404 U.S. 257, 262 (1971). This concept is grounded in a defendant's constitutional right to due process. *See State v. Castillo*, 205 Wis. 2d 599, 607, 556 N.W.2d 425 (Ct. App. 1996), *review dismissed as improvidently granted*, 213 Wis. 2d 488, 570 N.W.2d 44 (1997); *State v. Bond*, 139 Wis. 2d 179, 188, 407 N.W.2d 277 (Ct. App. 1987).

¶ 51. The party seeking to vacate a plea agreement must establish by clear and convincing evidence that a "material and substantial" breach of the agreement has occurred. *Bangert*, 131 Wis. 2d at 289; *State v. Jorgensen*, 137 Wis. 2d 163, 168, 404 N.W.2d 66 (Ct. App. 1987). We are satisfied that Warren has not met this burden here.

¶ 52. The record is devoid of any suggestion that Warren was promised by the circuit court or the State that he would not have to admit his guilt during probationary treatment. As the court of appeals noted in Case No. 96–2441:

> the only comments by the court in this regard informed Warren that his not having to "admit. . .anything in court" did *not* affect his obligation to enter in good faith into the counseling that would likely be imposed as a condition of confinement. And it is undisputed that that probation agent consistently expressed to Warren that he did have to admit responsibility for the assault in order to successfully complete the counseling that was a condition of his probation.

*Warren*, 211 Wis. 2d at 718–19.

¶ 53. Warren argues that following the entry of his plea, he did nothing that would justify the State's "change of position" with regard to its promise of a noncustodial sentence: he simply continued to assert his innocence as he had always done. In doing so, he cites two cases for the proposition that the State must adhere to promised sentence recommendations after the original sentence proceeding. *See Castillo*, 205 Wis. 2d 599; *State v. Windom*, 169 Wis. 2d 341, 485 N.W.2d 832 (Ct. App. 1992).

¶ 54. We need not examine these cases in detail, because once again, Warren's argument is based upon the faulty premise that an *Alford* plea is a promise that a defendant will never have to admit his guilt. Because an *Alford* plea is not infused with any special promises, the State did not "change its position" when it revoked his probation for failing to admit guilt during probationary treatment.

¶ 55. Because the State never promised or assured Warren that he would be able to maintain his innocence for purposes other than the plea itself, we conclude that the State did not breach its *Alford* plea agreement with Warren when it revoked his probation in this case.

"STRONG PROOF OF GUILT"

¶ 56. "Ordinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind." *Alford*, 400 U.S. at 32. The situation changes, however, when the defendant enters an *Alford* plea as Warren has done here. *See id.* at 37; 2

David Rossman, *Criminal Law Advocacy* ¶ 4.02 (1995). To accept an *Alford* plea in Wisconsin, the circuit court must determine that the summary of the evidence the state would offer at trial constitutes "strong proof of guilt." *See Garcia*, 192 Wis. 2d at 859–60; *Johnson*, 105 Wis. 2d at 663. *See also Alford*, 400 U.S. at 37.[17] Because the determination of the existence of a sufficient factual basis lies within the discretion of the circuit court, we will not overturn that determination unless it is clearly erroneous. *See Smith*, 202 Wis. 2d at 25.

¶ 57. "Strong proof of guilt" is not the equivalent of proof beyond a reasonable doubt, but it is "clearly greater than what is needed to meet the factual basis requirement under a guilty plea." *Smith*, 202 Wis. 2d at 27; *Spears*, 147 Wis. 2d at 435. The *Johnson* court provided more insight into what constitutes a sufficient factual basis to accept an *Alford* plea. *See Johnson*, 105 Wis. 2d at 664. In that case, the court of appeals examined the record to determine whether a "sufficient factual basis was established at the plea proceeding to substantially negate [the] defendant's claim of innocence." *Id.* We agree with this standard, and proceed to apply it to the facts of this case; we do so noting that in the context of a negotiated guilty plea, as here, a court "need not go to the same length to determine whether

---

[17] "The requirement of a higher level of proof in *Alford* pleas is necessitated by the fact that the evidence has to be strong enough to overcome a defendant's 'protestations' of innocence." *State v. Smith*, 202 Wis. 2d 21, 27, 549 N.W.2d 232 (1996). As we noted in *Garcia*, the requirement of "strong proof of guilt," together with the procedural safeguards afforded by Wis. Stat. § 971.08 and applicable review if the statute is not followed, "are sufficient to assure that an *Alford* plea is entered in a constitutionally acceptable manner." *Garcia*, 192 Wis. 2d at 859–60.

the facts would sustain the charge as it would when there is no negotiated plea." *Smith*, 202 Wis. 2d at 25 (quoting *Broadie v. State*, 68 Wis. 2d 420, 423–24, 228 N.W.2d 687 (1975)).

¶ 58. In this case, the circuit court was satisfied that the testimony given at the preliminary hearing constituted strong proof of guilt. We agree, and in large part let the victim's testimony and that of Officer Cupp speak for itself. The evidence reproduced above provides a sufficient factual basis to substantially negate Warren's protestations of innocence. Nevertheless, Warren draws our attention to three specific testimonial defects which allegedly illustrate that the evidence did not show strong proof of guilt. We examine these arguments in turn.

¶ 59. First, Warren argues that J.K. was unable to provide testimony regarding the sexual assault which occurred on October 2, 1989—the charge for which the *Alford* plea was entered. We disagree. A fair reading of the information in this case illustrates that the State accused Warren of sexual assault on more than one occasion for the charge to which Warren pled. *See* Record on Appeal, No. 97–0851 at 11:1, 65:2–3 (Information April 30, 1990; Plea Hrg. July 10, 1990). As the above-reproduced testimony of the victim reveals, J.K. testified explicitly about the events which occurred on one of those occasions: May 27, 1989.

¶ 60. Second, Warren asserts that J.K.'s testimony was contradicted by Cupp's testimony; J.K. testified that the assault on May 27, 1989, occurred in the afternoon, in the living room and on a couch, while Cupp testified that the same incident was supposed to have occurred in the morning, in the bedroom and on a bed. We reject this argument.

¶ 61. Officer Cupp's hearsay testimony regarding the specific time and location of the May 27, 1989, assault does not command the conclusion that the victim's testimony establishes something less than strong proof of guilt. The circuit court's conclusion in this regard was not clearly erroneous.

¶ 62. Finally, Warren argues that because J.K. physically referenced her "entire upper chest area" at the preliminary hearing, and testified that Warren touched her "crotch"—areas that are not specifically included in the definitions of "sexual contact" or "intimate parts" under Wis. Stat. § 939.22(19)—her testimony does not establish strong proof of guilt.

¶ 63. Not only is this a strained interpretation of the facts, but it would be absurd to require a ten-year old child to testify with the same language that the state legislature has chosen for our statutes. We have little trouble concluding that J.K.'s explicit testimony was sufficient to fall within the statutory definitions necessary for a sexual assault conviction. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion in finding strong proof of Warren's guilt so as to justify acceptance of his *Alford* plea.

## APPOINTMENT OF COUNSEL

¶ 64. In his final argument to this court, Warren asserts that he was denied his due process right to appointment of counsel for the post-conviction proceedings in this case. This presents a question of constitutional fact which we review de novo, without deference to the conclusion of the circuit court. *See*

*State v. Dean*, 163 Wis. 2d 503, 511, 471 N.W.2d 310 (Ct. App. 1991).[18]

■

¶ 65. It is well established that an indigent defendant has a constitutional right to appointed counsel on his or her first direct appeal of right from a conviction. *See Douglas v. California*, 372 U.S. 353, 357–58 (1963). The due process clause, however, does not require appointment of counsel for discretionary appeals. *See generally Wainwright v. Torna*, 455 U.S. 586 (1982); *Ross v. Moffitt*, 417 U.S. 600 (1974). Thus, as the United States Supreme Court has stated, "the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

■

¶ 66. Warren's motion for post-conviction relief pursuant to Wis. Stat. § 974.06 is not a direct appeal from a conviction. Rather, a § 974.06 proceeding is considered to be civil in nature, and authorizes a collateral attack on a defendant's conviction. *See* § 974.06(6).[19]

---

[18] In this case, the circuit court found Warren indigent and referred him to the State Public Defender's Office (SPD) for appointment of counsel pursuant to Wis. Stat. § 974.06(3)(b). The SPD declined to appear on behalf of Warren pursuant to its discretionary authority to do so. *See* Wis. Stat. § 977.05(4)(j). The circuit court also declined, in its discretion pursuant to *State v. Dean*, 163 Wis. 2d 503, 471 N.W.2d 310 (Ct. App. 1991), to appoint counsel. Warren does not challenge the circuit court's discretionary decision to decline to appoint counsel; he argues instead that he has a constitutional right to appointed counsel in this case.

[19] Wisconsin Stat. § 974.06 provides in relevant part:

**974.06 Postconviction procedure. (1)** After the time for appeal or postconviction remedy provided in s. 974.02 has expired,

Defendants do not have a constitutional right to counsel when mounting collateral attacks upon their convictions, such as the § 974.06 postconviction motion involved here. *See Finley*, 481 U.S. at 555; *Johnson v. Avery*, 393 U.S. 483, 488 (1969). Therefore, Warren did not have a right to appointed counsel at his § 974.06 postconviction proceedings.

¶ 67. The appellate courts do retain the discretion to appoint counsel to an indigent defendant upon appeal from the denial of a Wis. Stat. § 974.06 motion, *see Peterson v. State*, 54 Wis. 2d 370, 381–82, 195 N.W.2d 837 (1972); *State v. Alston*, 92 Wis. 2d 893, 895, 288 N.W.2d 866 (Ct. App. 1979), but we decline to exercise such discretion in this case by imposing the cost of this litigation on the State Public Defender.

¶ 68. Warren argues that because the State did not revoke his probation until well after the time limits for filing a direct appeal had expired, he was "deprived. . .of his constitutional right to test the valid-

---

a prisoner in custody under sentence of a court or a person convicted and placed with a volunteers in probation program under s. 973.11 claiming the right to be released upon the ground that the sentence was imposed in violation of the U.S. constitution or the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

. . . .

(6) Proceedings under this section shall be considered civil in nature, and the burden of proof shall be on the person.

As we noted in *Peterson v. State*, 54 Wis. 2d 370, 381, 195 N.W.2d 837 (1972), "the [§ 974.06] motion was authorized as a substantial replacement for the petition for habeas corpus in this court. Matters which usually were presented by petition for habeas corpus to this court now are covered by the sec. 974.06 postconviction motion to the trial court."

ity of his criminal conviction on direct appeal with the assistance of court appointed counsel." Warren Brief, No. 97–0851 at 39. Therefore, Warren asks this court to conclude that he has a due process right to appointed counsel to pursue his claims in postconviction proceedings under Wis. Stat. § 974.06. We are not persuaded by Warren's argument.

¶ 69. We begin analyzing this argument from our stated premise that a defendant does not have a constitutional right to appointed counsel in a Wis. Stat. § 974.06 postconviction proceeding. *See Finley*, 481 U.S. at 555. Warren attempts to circumvent this principle by bootstrapping his collateral postconviction motion to a direct appeal from his conviction for sexual assault—a right of appeal he was allegedly "prevented" from exercising.

¶ 70. From the outset, this argument is troubling because Warren explicitly waived his rights to a direct appeal. *See* Record on Appeal, No. 97–0851 at 65:7 (Plea Hrg. July 10, 1990). More importantly, pursuant to Warren's theory, the due process clause would guarantee court-appointed counsel in a postconviction proceeding every time a defendant's probation was revoked after the time for filing a direct appeal had expired. We decline to stretch the due process clause to such lengths. Therefore, we hold that Warren does not have a due process right to appointed counsel in this case.[20]

---

[20] Warren relies upon *Piper v. Popp*, 167 Wis. 2d 633, 482 N.W.2d 353 (1992), for his request that we apply to this case the presumption in favor of appointed counsel in civil actions where the indigent defendant may be deprived of physical liberty. *Piper* is inapplicable to the facts of this case; the issue in *Piper* was whether due process requires the appointment of counsel to represent an indigent prisoner in defending a civil tort action.

¶ 71. In sum, we conclude that Warren's right to due process was not violated when the State revoked his probation for failing to admit his guilt during probationary treatment; that Warren's plea was knowingly and voluntarily entered; that the State did not breach its plea agreement with Warren; that there was "strong proof of guilt" sufficient to justify the circuit court's acceptance of his *Alford* plea; and that Warren did not have a due process right to appointment of counsel in his postconviction proceedings. Accordingly, the decision of the court of appeals in Case No. 96–2441, and the order of the circuit court in No. 97–0851 are affirmed.

¶ 72. We pause to once again call for heightened diligence on the part of circuit courts in accepting *Alford* pleas—particularly in cases involving sex offenses. The acceptance of *Alford* pleas is entirely discretionary,[21] and circuit courts should apply a critical

---

*See id.* at 644. The analysis employed by *Piper* does not apply to defendants who seek appointed counsel in Wis. Stat. § 974.06 postconviction proceedings.

[21] Defendants do not have a constitutional right to enter a guilty plea. As the *Alford* court stated:

> Our holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court. . .although the States may by statute or otherwise confer such a right. Likewise, the States may bar their courts from accepting guilty pleas from any defendants who assert their innocence.

*North Carolina v. Alford*, 400 U.S. 25, 38 n.11 (1970). Wisconsin law also reflects this principle. *See Garcia*, 192 Wis. 2d at 856 ("the circuit courts of Wisconsin may, *in their discretion*, accept *Alford* pleas") (emphasis added); Wis. Stat. § 971.06(1)(c) (criminal defendant may plead no contest "subject to the approval of

651

eye toward accepting such pleas. An inherent conflict arises when a charged sex offender enters an *Alford* plea: the offender cannot maintain innocence under the *Alford* plea and successfully complete the sex offender treatment program, which requires the offender to admit guilt.

¶ 73. One recent article stresses the problems inherent with accepting *Alford* pleas by sex offenders. *See* Kim English, et al., *Managing Adult Sex Offenders in the Community—A Containment Approach* at 7 (Nat'l Inst. Justice January 1997). The authors advocate consistent public policies to advance the public safety priority of sex offender management. *See id.* "Particularly important is the development of policies that prohibit pleas or dispositions that reinforce sex offenders' frequent refusal to admit their crimes, to acknowledge the seriousness of their actions, or to take responsibility for the harm they have caused." *Id.*

¶ 74. Two examples of such pleas: *Alford* and no contest pleas. *See id.* The authors' point is entirely relevant to this case: "Such pleas grant sex offenders official justification to continue denying their offending behavior after conviction." *Id.* Given the accepted premise that admission of guilt is a necessary "first step towards rehabilitation" of sex offenders, *Carrizales*, 191 Wis. 2d at 95, the circuit courts would be wise to avoid these problems in the first place. *See* Alice J. Hinshaw, Comment, *State v. Cameron: Making the Alford Plea an Effective Tool in Sex Offense Cases*, 55 Mont. L. Rev. 281, 297 (1994) ("Prohibition of the Alford plea in sex offense cases offers the simplest solution to the Alford plea conflict. Removing the Alford

the court"). *See also generally* Wis JI—Criminal SM–32A (1995) (illustrating that the circuit courts have discretion whether to accept a no contest or *Alford* plea).

plea simply eliminates the threat of appeals based on the defendant's confusion or misunderstanding concerning the consequences of the plea.").

¶ 75. Should the circuit courts in their discretion decide to accept *Alford* pleas in such cases, we strongly advise them to give *Alford*-pleading defendants an instruction at the time of the plea that their protestations of innocence extend only to the plea itself, and do not serve as a guarantee that they cannot subsequently be punished for violating the terms of their probation which require an admission of guilt. Because of the unique nature of *Alford* pleas, circuit courts accepting such pleas should take extra care to ensure that defendants understand that in order to successfully complete the treatment program, they will be required to admit guilt. Such instructions will avert any misconceptions by defendants that the *Alford* plea provides any "promises" or "guarantees" of what is constitutionally appropriate probationary treatment.

*By the Court.*—The decision of the court of appeals in Case No. 96–2441 is affirmed. The order of the circuit court in Case No. 97–0851 is affirmed.