IN THE SUPREME COURT OF NORTH CAROLINA

No. 18A20

Filed 20 November 2020

IN THE MATTER OF: A.S.T.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 17 October 2019 by Judge Benjamin S. Hunter in District Court, Person County. This matter was calendared for argument in the Supreme Court on 7 October 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee Person County Department of Social Services.*

*Nelson Mullins Riley & Scarborough, LLP, by Carrie A. Hanger, for appellee Guardian ad Litem.*

*Richard Croutharmel for respondent-appellant father.*

BEASLEY, Chief Justice.

Respondent appeals from an order terminating his parental rights to his minor child, A.S.T. (Andrew).[1] We hold that the trial court did not err by terminating respondent's parental rights on the ground of neglect pursuant to N.C.G.S. § 7B-1111(a)(1) and affirm the trial court's order.

---

[1] A pseudonym is used throughout the opinion to protect the juvenile's identity and for ease of reading.

On 10 May 2017, the Person County Department of Social Services (DSS) filed a juvenile petition alleging that Andrew was a neglected juvenile after receiving reports of improper care, improper supervision, and substance abuse.[2] Subsequent drug screens of respondent and Andrew were positive for cocaine and benzoylecgonine. Andrew also tested positive for norcocaine, cocaethylene, and THC metabolites. Andrew's mother did not appear for her drug screens and her whereabouts were unknown when DSS filed the juvenile petition. DSS obtained nonsecure custody of Andrew by order entered 16 May 2017.

After a hearing on 5 June 2017, the trial court entered an order adjudicating Andrew to be a neglected juvenile. The trial court continued custody of Andrew with DSS and granted respondent supervised visitation with him for one hour each week. Respondent was ordered to establish a case plan with DSS, follow the terms of the case plan, submit to random drug screening, and complete a substance abuse assessment and follow all recommendations.

The trial court entered a review order after a hearing on 7 August 2017. The trial court found that respondent was participating in group substance abuse classes, was participating in the Parents as Teachers program during visitations, and was very appropriate during visitations. The only barrier to reunification was found to be consistency, and the trial court found that respondent needed to demonstrate he could

---

[2] Andrew was six months old when DSS filed the juvenile petition.

continue with his sobriety, mental health treatment, and maintaining employment. Respondent was arrested on 24 September 2017 on charges of assault with a deadly weapon with intent to kill and discharging a firearm into occupied property.

In orders from review hearings on 20 November 2017 and 5 February 2018, the trial court again found that respondent was appropriate during visitations, but he continued to struggle with alcoholism. The trial court found respondent had tested positive for alcohol on 21 August 2017, he continued to have substance abuse issues, his bad judgment was slowing down his progress toward reunification, he was not in recommended group therapy, and he had not taken a recommended psychiatric evaluation.

In its order from the first permanency planning review hearing held on 30 April 2018, the trial court found that respondent had completed a psychiatric evaluation and had recently reengaged in substance abuse group therapy sessions, but his hair follicle drug screen on 28 February 2018 was positive for cocaine. Respondent continued to struggle with alcoholism and substance abuse issues. The trial court continued Andrew's primary permanent plan as reunification and set a concurrent plan of adoption.

At a subsequent permanency planning review hearing held on 16 July 2018, the trial court changed the primary permanent plan for Andrew to adoption and the

concurrent plan to reunification.[3] Respondent had entered an *Alford* plea to discharging a firearm into occupied property on 18 May 2018 and was incarcerated at the time of the hearing, receiving a sentence of 25 to 42 months' imprisonment. In return for his plea, the State dismissed the charge of assault with a deadly weapon with intent to kill.

On 25 April 2019, DSS filed a motion to terminate respondent's parental rights to Andrew, alleging grounds of neglect and failure to make reasonable progress to correct the conditions that led to Andrew's removal from the home. *See* N.C.G.S. § 7B-1111(a)(1)–(2) (2019). After a hearing on 30 September 2019, the trial court entered an order terminating respondent's parental rights to Andrew on 17 October 2019.[4] The trial court found both grounds alleged in the motion to terminate parental rights and concluded that terminating respondent's parental rights was in Andrew's best interests. Respondent appealed.

Respondent argues the trial court erred in adjudicating grounds to terminate his parental rights. We disagree.

This Court reviews a trial court's adjudication of grounds to terminate parental rights "to determine whether the findings are supported by clear, cogent and

---

[3] The trial court conducted two additional permanency planning review hearings on 1 October 2018 and 4 February 2019, while respondent was incarcerated. The trial court's orders from those hearings had findings of fact and conclusions of law similar to its previous permanency planning review orders with regard to respondent and Andrew but differed with regard to Andrew's mother and her child with another man.

[4] The trial court's order also terminated the parental rights of Andrew's mother, but she is not a party to this appeal.

convincing evidence and the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019) (citing *In re Moore*, 306 N.C. 394, 403−04 (1982)). "Unchallenged findings of fact made at the adjudicatory stage are binding on appeal." *In re Z.V.A.*, 373 N.C. 207, 211 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97 (1991)). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019).

Grounds exist to terminate parental rights where "[t]he parent has . . . neglected the juvenile . . . within the meaning of [N.C.]G.S. [§] 7B-101." N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is defined, in pertinent part, as a juvenile "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2019). To terminate parental rights based on neglect, "if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent." *In re D.L.W.*, 368 N.C. 835, 843 (2016) (citing *In re Ballard*, 311 N.C. 708, 713−15 (1984)). "When determining whether such future neglect is likely, the [trial] court must consider evidence of changed circumstances occurring between the period

of past neglect and the time of the termination hearing." *In re Z.V.A.*, 373 N.C. at 212

(citing *In re Ballard*, 311 N.C. at 715).

The trial court concluded that respondent had neglected Andrew and there was

a probability the neglect would continue if he were returned to respondent's care. The

trial court made the following findings of fact in support of its adjudication of the

ground of neglect to terminate respondent's parental rights:

> 13. Prior to May 16, 2017, the parents were exercising custody of this child;
>
> 14. The parents failed to provide proper care for the child, and did keep this child in an injurious environment by using and continuing to use controlled substance after his birth;
>
> 15. The parents failed to provide proper care for the child, and did keep this child in an injurious environment by allowing the child to ingest cocaine while the child was less than six (6) months old;
>
> . . . .
>
> 17. After the parents lost custody, DSS offered services to the parents to work towards recovering custody of their child;
>
> 18. The parents initially utilized the services offered by DSS, but failed to consistently comply with their respective case plans;
>
> 19. The parents have not been willing to consistently work with the DSS social workers to reunify themselves with their child;
>
> . . . .

21. [Respondent] testified that he received a citation for Driving While Impaired during the pendency of this action, and that he plead [sic] guilty to such offense;

22. [Respondent] also acknowledged that at that time he did not possess a valid North Carolina Driver's License;

23. . . . [Respondent's] criminal history shows four prior Driving While License Revoked convictions and two additional Driving While Impaired convictions which occurred prior to the current DSS proceeding;

24. [Respondent] denied that he used cocaine, but he acknowledged that he took a drug test on February 28, 2018 that showed cocaine in his system;

25. [Respondent] has committed a serious criminal offense (Shooting into an Occupied Dwelling) which has caused him to be incarcerated, leaving him unavailable to visit or resume custody of his child; he has a projected release date of June 22, 2020;

26. [Respondent] testified that he was not guilty of the offense and only took a plea to "get the case over with";

27. In either case, [respondent] has voluntarily made himself unavailable to care for [Andrew] for a substantial portion of [Andrew's] life;

. . . .

34. Both parents' last visit with [Andrew] was May 15, 2018, and [Andrew] has not seen his parents for sixteen (16) months;

35. That the parents have not provided regular care for their minor child for more than two (2) years;

. . . .

37. That [respondent] has failed to significantly or substantially contribute to [Andrew's] care for the last two years;

38. During his time of incarceration [respondent] testified, and the [c]ourt so finds, that he made no attempt to make any phone calls to his son from prison, even though he telephoned the mother . . . regularly;

39. [Respondent] also testified, and the [c]ourt so finds, that he did not send any cards, letters or gifts to his child while in prison;

40. [Respondent] testified that he took this position of no contact "because [Andrew] is a baby";

41. [Respondent's] options for showing affection while incarcerated are greatly limited, but he is not excused from showing interest in the child's welfare by whatever means available;

. . . .

47. Services and recommendations for services to achieve reunification have been offered to the parents by Person County DSS, and the parents have not successfully recovered custody of their child;

48. The [c]ourt has conducted regular reviews of the custody of this child, and at each review, the [c]ourt has maintained custody of the child with Person County DSS, and declined to return custody of the child to the . . . mother or [respondent];

49. Twenty-eight (28) months have passed since the child was removed from the parents' custody and the parents have taken few tangible steps to resume custody of their child;

. . . .

53. Based upon the foregoing facts, there are grounds to terminate the parental rights as to . . . [respondent] pursuant to [N.C.G.S. § 7B-1111(a)(1)] as the child is a neglected juvenile and there is a probability of continuing neglect within the foreseeable future . . . because . . . [respondent has] failed to make contact with [his] child in more than one year[.]

Respondent argues that finding of fact 15's statement that he "allow[ed] the child to ingest cocaine" is speculative because there was no evidence about how the cocaine came to be in Andrew's body. It is uncontroverted that Andrew had cocaine in his system while he was under respondent's care and supervision. There was no evidence concerning the means by which the cocaine came to be in Andrew's system, and we thus disregard the portion of finding of fact 15 regarding Andrew's ingestion of cocaine. Nevertheless, the evidence is sufficient to support the remaining portion of finding of fact 15, and respondent's failure to keep Andrew from being exposed to cocaine supports the trial court's findings that he failed to provide proper care for Andrew and kept him in an injurious environment.

Respondent next argues that findings of fact 18 and 19 are unsupported by the evidence because he consistently complied with his case plan until he was incarcerated after entering an *Alford* plea in May 2018, as shown by his participation in substance abuse treatment, taking random drug screens, participation in a parenting education program, consistent visitation prior to his incarceration, and contact with the social worker even while incarcerated. Respondent contends that the only reason he did not complete his case plan was because he was incarcerated.

Respondent, however, overly emphasizes his successes and minimizes his failings. The social worker testified that respondent's participation in his substance abuse treatment was inconsistent up until his incarceration and that he tested positive for alcohol and cocaine during the course of the case. Respondent denied using cocaine and stated that he had no idea how cocaine could have been in his system. Respondent then willfully placed himself in a position of being unable to continue working on his case plan when he entered an *Alford* plea to the offense of discharging a firearm into occupied property. The trial court's findings that respondent failed to consistently comply with and work on his case plan are supported by clear, cogent, and convincing evidence.

Respondent next challenges finding of fact 27, in which the trial court found that he "voluntarily" made himself unavailable to care for Andrew, and argues that he was wrongfully accused and pled guilty to the offense to shorten the time he would be away from Andrew. It is well established that "an 'Alford plea' constitutes 'a guilty plea in the same way that a plea of *nolo contendere* or no contest is a guilty plea.' " *State v. Alston*, 139 N.C. App. 787, 792 (2000) (quoting *State ex rel. Warren v. Schwarz*, 579 N.W.2d 698, 706 (Wis. 1998)).

> [A]n *Alford* plea is not the saving grace for defendants who wish to maintain their complete innocence. Rather, it is a device that defendants may call upon to avoid the expense, stress and embarrassment of trial and to limit one's exposure to punishment . . . .

*Id.* at 793 (quoting *Warren*, 579 N.W.2d at 707). By entering an *Alford* plea, respondent "agreed to be[ ] 'treated as . . . guilty' whether or not he admitted guilt." *Id.* (second alteration in original). Respondent's charge of discharging a firearm into occupied property and his subsequent plea resulted in his incarceration for more than two years and supports the trial court's finding that he "voluntarily made himself unavailable to care for [Andrew] for a substantial portion of [Andrew's] life."

Respondent also challenges the portion of finding of fact 38 which states that he made no attempt to telephone Andrew while he was incarcerated. Respondent does not challenge the evidentiary support for the finding, and it is fully supported by respondent's own testimony. Respondent instead presents arguments relating to the weight this finding should be afforded given other evidence in the case, which is not the province of this Court. *See In re D.L.W.,* 368 N.C. 835, 843 (2016) (stating that it is the trial court's responsibility during a termination-of-parental-rights hearing to consider all the evidence, pass upon the credibility of the witnesses, and determine the reasonable inferences to be drawn therefrom).

Next, respondent challenges the portion of finding of fact 49 which states that he has taken few tangible steps toward reunification. He contends that his participation in substance abuse treatment, drug screens, and a parenting education program, along with his consistent visitation with Andrew and continued contact with the social worker after his incarceration refute this finding. The evidence before the trial court established that respondent never completed his substance abuse

treatment; continued to test positive for cocaine until he was incarcerated; drove while impaired by alcohol while the case was pending; and discharged a firearm into occupied property, which resulted in his incarceration and disrupted his limited progress toward addressing his substance abuse issues. We hold that this finding of fact is supported by clear, cogent, and convincing evidence.

Lastly, respondent challenges finding of fact 53, wherein the trial court finds that he neglected Andrew and that there is a probability of continuing neglect within the foreseeable future. This determination, however, is a conclusion of law, and we will review it as such in conjunction with respondent's challenges to the trial court's conclusion of law that respondent's parental rights should be terminated on the ground of neglect. *See In re J.O.D.*, 374 N.C. 797, 807 (2020) ("[T]he trial court's determination that neglect is likely to reoccur if [a child is] returned to his [parent's] care is more properly classified as a conclusion of law. . . . Although the trial court labeled these conclusions of law as findings of fact, 'findings of fact [which] are essentially conclusions of law . . . will be treated as such on appeal.' ") (fifth and sixth alterations in original) (internal citations omitted)).

Respondent contends that the trial court's conclusion that there is a probability of future neglect is based solely on his alleged failure to keep in contact with Andrew, which is unsupported by the evidence due to his incarceration and Andrew's young age. Respondent further argues that the trial court made no finding of fact concerning the probability of future neglect that was supported by competent evidence and that

he presented evidence controverting the finding that there was a probability of future neglect. Respondent's arguments are misplaced.

We review de novo conclusions of law on the existence of grounds to terminate parental rights. *In re C.B.C.*, 373 N.C. at 19. "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [trial court]." *In re Appeal of Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647 (2003). Therefore, in our analysis of whether the trial court erred by concluding that the ground of neglect existed to terminate respondent's parental rights, we are not limited to the trial court's statement that the probability of continuing neglect is due to respondent's failure to keep in contact with Andrew.

The trial court's findings of fact show that Andrew was adjudicated to be a neglected juvenile due to the substance abuse issues of both respondent and the mother. Respondent has failed to appreciably address his substance abuse issues. Respondent denied using cocaine, but he tested positive for cocaine in February 2018 and has only shown an extended abstinence from cocaine use while incarcerated. Respondent did not complete substance abuse treatment and was charged with driving while impaired just three months after DSS filed the underlying juvenile petition, while he was attending substance abuse treatment. Respondent also incurred serious felony charges during the pendency of this case and was convicted of discharging a firearm into occupied property, which resulted in his incarceration for a minimum of 25 months. During his incarceration, he made no attempt to contact

Andrew and had limited contact with DSS. Although Andrew's young age limits the effect that respondent's contact with Andrew may have had, respondent cannot use his incarceration as a shield against a conclusion that there is a probability of future neglect. *See In re S.D.*, 374 N.C. 67, 75–76 (2020) ("[I]ncarceration does not negate a father's neglect of his child because the sacrifices which parenthood often requires are not forfeited when the parent is in custody. Thus, while incarceration may limit a parent's ability to show affection, it is not an excuse for a parent's failure to show interest in a child's welfare by whatever means available." (cleaned up)).

We hold that the trial court's findings of fact support its conclusion that respondent has previously neglected Andrew and that there is a likelihood of future neglect if Andrew were returned to his care. *See id.* at 87. Accordingly, the trial court did not err by concluding that respondent's parental rights in Andrew were subject to termination on the ground of neglect pursuant to N.C.G.S. § 7B-1111(a)(1). *See id.* at 87–88; *In re E.H.P.,* 372 N.C. at 395 ("[A]n adjudication of any single ground in N.C.G.S. § 7B-1111(a) is sufficient to support a termination of parental rights.") We therefore need not address respondent's arguments regarding the ground of failure to make reasonable progress to correct the conditions that led to the removal of Andrew from the home. *See id.* Respondent does not challenge the trial court's conclusion that it was in Andrew's best interests to terminate respondent's parental rights, and we thus affirm the trial court's order.

AFFIRMED.